JUDGE CEDARBAUM

08 CV 2005

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------x

JUDITH GREENBERG, Derivatively on
Behalf of MUNICIPAL MORTGAGE &
EQUITY LLC,

                 Plaintiff,

    vs.

MICHAEL L. FALCONE, KEITH J.
GLOECKL, GARY A. MENTESANA, EARL
W. COLE, III, MARK K. JOSEPH, CHARLES
C. BAUM, RICHARD O. BERNDT, ROBERT
S. HILLMAN, DOUGLAS A. MCGREGOR,
EDDIE C. BROWN, FRED N. PRATT, JR.,
ARTHUR S. MEHLMAN, BARBARA B.
LUCAS, WILLIAM S. HARRISON, ANGELA
A. BARONE, MELANIE M. LUNDQUIST
and ROBERT J. BANKS,

                Defendants,

   -and-

MUNICIPAL MORTGAGE & EQUITY LLC,
a Delaware corporation,

            Nominal Defendant.

------------------------------------------------x

: Case No.
:
: VERIFIED SHAREHOLDER DERIVATIVE
: COMPLAINT FOR BREACH OF FIDUCIARY
: DUTY, WASTE OF CORPORATE ASSETS,
: UNJUST ENRICHMENT AND VIOLATIONS
: OF THE SECURITIES EXCHANGE ACT OF
: 1934 AND SARBANES-OXLEY ACT OF 2002
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
: DEMAND FOR JURY TRIAL



FEB 2 8 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, by her attorneys, submits this Verified Shareholder Derivative Complaint against the defendants named herein.

## NATURE AND SUMMARY OF THE ACTION

1.      This is a shareholder derivative action brought by a shareholder of  Municipal Mortgage & Equity LLC ("MuniMae" or the "Company") on behalf of the Company against certain of its officers and directors seeking to remedy defendants' violations of state and federal law, including breaches of fiduciary duties, waste of corporate assets, unjust enrichment  and violations of the Securities Exchange Act of 1934 ("Exchange Act") and the Sarbanes-Oxley Act of 2002 ("SOX") that occurred between April 2003 and the present (the "Relevant Period") and that have caused substantial monetary losses to MuniMae and other damages, such as to its reputation and goodwill.

2.      MuniMae arranges debt and equity financing for developers and owners of real estate and clean energy projects.  The Company also provides investment management and advisory services.

3.      During the Relevant Period, defendants directed MuniMae to issue a series of improper statements concerning its business prospects and financial results.  In particular, MuniMae shifted losses to various entities to keep those losses off its books.  Under Generally Accepted Accounting Principles ("GAAP"), the losses of those entities should have been recorded on the Company's books because the entities qualified as variable interest entities ("VIEs").  VIEs are entities where a particular company participates in the majority of that entities' risk even though that company does not have a majority interest.  In 2003, the Financial Accounting Standards Board ("FASB") revised the accounting rules concerning VIEs to curb abuses from companies such as Enron, who used entities in which the company did not have a controlling interest to hide losses.

4.      In addition to MuniMae's improper accounting for VIEs, MuniMae improperly recognized revenues flowing from the Company's low income housing tax credit business as well as its revenues from asset management and guarantee fees.  Moreover, MuniMae improperly accounted for its loan portfolio, including the fair value of loans held-for-sale as well as a number of other critical accounting issues.

5.      Throughout the Relevant Period, however, defendants concealed the impact of MuniMae's improper accounting from the Company's public statements and filings.  As a result, MuniMae's public statements caused an artificial inflation of the Company's stock price.  While defendants were directing MuniMae to issue improper statements concerning its accounting for VIEs, they were also directing MuniMae to repurchase over $1.3 million worth of its own shares at artificially inflated prices.  Certain of the defendants capitalized on that artificial inflation by selling over $14.8 million worth of their personally owned shares.

6.      Then, on September 13, 2006, MuniMae was forced to disclose that it would restate its financial statements for 2003 to March 2006.  For over a year following that announcement, however, defendant concealed the details of the restatement and MuniMae's underlying accounting problems.  It was not until January 28, 2008, that MuniMae disclosed substantial details concerning the restatement including, importantly, that the Company was revising its accounting for over 200 VIEs and was currently evaluating its transactions with over 2000 real estate partnerships to determine if the Company's interest in those partnerships should also be consolidated.

7.      In the wake of these disclosures, MuniMae's value declined from over $32 per share to less than $7 per share—a $950 million market capitalization loss.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction in this case arising under Article III of the United States Constitution and 28 U.S.C. §1331 because of claims arising under the Exchange Act and SOX.  This Court also has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(a)(2) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interests and costs.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

9.      This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an

individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because: (i) MuniMae has offices located in this District; (ii) the transactions and wrongs complained of herein occurred while MuniMae was listed on the New York Stock Exchange; (iii) one or more of the defendants either resides in or maintains offices in this District; (iv) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to MuniMae occurred in this District; and (v) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

11.     Plaintiff Judith Greenberg is and was, at times relevant hereto, an owner and holder of MuniMae stock.  Plaintiff is a citizen of New York.

12.     Nominal defendant MuniMae is a Delaware corporation with principal executive offices located at 621 East Pratt Street, Suite 300, Baltimore, Maryland.  MuniMae also has offices located at 99 Park Ave., Ste 2010 New York, NY.  MuniMae arranges debt and equity financing for developers and owners of real estate and clean energy projects.  The Company also provides investment management and advisory services.

13.     Defendant Michael L. Falcone ("Falcone") is MuniMae's Chief Executive Officer ("CEO") and has been since January 2005.  Falcone is also a MuniMae director and has been since 1999 and President and has been since 1997.  Falcone was MuniMae's Chief Operating Officer from 1997 to January 2005.  Because of Falcone's positions, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of MuniMae including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors ("Board")

3

meetings and committees thereof, as well as reports and other information provided to him in connection therewith.  During the Relevant Period, Falcone participated in the issuance of improper statements, including the preparation of the improper press releases and Securities and Exchange Commission ("SEC") filings and approval of other statements made to the press, securities analysts and MuniMae shareholders.  Defendant Falcone received the following compensation:

| Fiscal Year | Salary | Bonus | Securities Underlying Options | LTIP Payouts | All Other Compensation |
|---|---|---|---|---|---|
| 2005 | $423,077 | $600,000 | 201,863 | - | $28,986 |
| 2004 | $362,500 | $525,000 | - | - | $24,763 |
| 2003 | $312,813 | $378,125 | - | - | $20,448 |
| 2002 | $277,382 | $327,377 | - | $89,036 | $18,103 |
| 2001 | $250,000 | $100,000 | - | - | $22,218 |
| 2000 | $248,711 | $90,000 | - | - | $13,529 |

Defendant Falcone sold 59,812 shares of MuniMae stock for $1,524,619.39 in proceeds while in possession of material non-public information.  Defendant Falcone is a citizen of Maryland.

14.    Defendant Keith J. Gloeckl ("Gloeckl") is a MuniMae Executive Vice President and has been since July 2003.  Gloeckl was MuniMae's Senior Chief Investment Officer from July 2001 to July 2003 and Senior Vice President from October 1999 to 2003.  Because of Gloeckl's positions, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of MuniMae including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings, as well as reports and other information provided to him in connection therewith.  During the Relevant Period, Gloeckl participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and MuniMae shareholders.  Defendant Gloeckl received the following compensation:

| Fiscal Year | Salary | Bonus | Securities Underlying Options | LTIP Payouts | All Other Compensation |
|---|---|---|---|---|---|
| 2004 | $309,750 | $385,000 | - | $33,337 | $872 |
| 2003 | $290,063 | $238,000 | - | $37,667 | $650 |
| 2002 | $277,875 | $100,000 | - | - | $754 |

| Fiscal Year | Salary | Bonus | Securities Underlying Options | All Other Compensation |
|---|---|---|---|---|
| 2001 | $266,094 | $90,000 | - | - | $2,712 |
| 2000 | $252,897 | $90,000 | 87,500 | - | $3,245 |
| 1999 | $47,462 | - | - | - | $13,500 |

Defendant Gloeckl sold 65,000 shares of MuniMae stock for $1,609,073.40 in proceeds while in possession of material non-public information.  Defendant Gloeckl is a citizen of Florida.

15.     Defendant Gary A. Mentesana ("Mentesana") is a MuniMae Executive Vice President and head of the Affordable Housing Group and has been since July 2003.  Mentesana was MuniMae's Chief Capital Officer from July 2001 to 2003; Senior Vice President from May 1997 to 2003; Chief Financial Officer from January 1998 to April 2001; and Vice President from August 1996 to May 1997.  Because of Mentesana's positions, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of MuniMae including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings, as well as reports and other information provided to him in connection therewith.  During the Relevant Period, Mentesana participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and MuniMae shareholders.  Defendant Mentesana received the following compensation:

| Fiscal Year | Salary | Bonus | Securities Underlying Options | All Other Compensation |
|---|---|---|---|---|
| 2005 | $289,231 | $250,000 | 62,112 | $17,239 |
| 2004 | $270,000 | $300,000 | - | $18,442 |
| 2003 | $250,000 | $233,333 | - | $15,518 |
| 2002 | $238,462 | $40,000 | - | $16,449 |
| 2001 | $160,000 | $80,000 | - | $16,903 |
| 2000 | $159,731 | $80,000 | - | $12,364 |
| 1999 | $120,000 | $100,000 | - | $9,035 |
| 1998 | $109,231 | $48,000 | - | $7,814 |
| 1997 | $88,693 | $25,000 | 67,431 | $6,490 |
| 1996 | $29,456 | - | - | $738 |

Defendant Mentesana sold 15,000 shares of MuniMae stock for $391,511 in proceeds while in possession of material non-public information.  Defendant Mentesana is a citizen of Maryland.

16.     Defendant Earl W. Cole, III ("Cole") is MuniMae's Executive Vice President responsible for the Corporate Credit and Portfolio Risk Management group and has been since 2003.

Because of Cole's position, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of MuniMae including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings, as well as reports and other information provided to him in connection therewith.   During the Relevant Period, Cole participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and MuniMae shareholders. Defendant Cole sold 20,750 shares of MuniMae stock for $531,432.50 in proceeds while in possession of material non-public information.   Defendant Cole is a citizen of Maryland.

17.     Defendant Mark K. Joseph ("Joseph") is MuniMae's Chairman of the Board and has been since 1996.   Joseph was MuniMae's CEO from 1996 to January 2005.   Because of Joseph's positions, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of MuniMae including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith.   During the Relevant Period, Joseph participated in the issuance of improper statements, including the preparation of the improper press releases and other statements and approval of SEC filings made to the press, securities analysts and MuniMae shareholders.   Defendant Joseph received the following compensation:

| Fiscal Year | Salary | Bonus | Securities Underlying Options | LTIP Payouts | All Other Compensation |
|---|---|---|---|---|---|
| 2004 | $337,500 | $575,000 | - | $66,669 | $21,513 |
| 2003 | $300,313 | $400,000 | - | $66,667 | $18,964 |
| 2002 | $275,133 | $349,375 | - | - | $19,236 |
| 2001 | $250,000 | $100,000 | - | - | $17,011 |
| 2000 | $248,077 | $100,000 | - | - | $11,280 |
| 1999 | $150,000 | $150,000 | - | - | $10,308 |
| 1998 | $157,769 | $108,000 | - | - | $9,429 |
| 1997 | $150,000 | $50,000 | 179,815 | - | $6,230 |
| 1996 | $62,589 | - | - | - | $795 |

Defendant Joseph sold 179,815 shares of MuniMae stock for $4,680,768.75 in proceeds while in possession of material non-public information.  Defendant Joseph is a citizen of Maryland.

18.     Defendant Charles C. Baum ("Baum") is a MuniMae director and has been since 1996.  Baum is also a member of MuniMae's Audit Committee and has been since 2003, and a member of MuniMae's Compensation Committee and has been since 2003.  Because of Baum's positions, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of MuniMae including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith.  During the Relevant Period, Baum participated in the issuance of improper statements, including the preparation of the improper press releases and other statements and approval of SEC filings made to the press, securities analysts and MuniMae shareholders.  Defendant Baum is a citizen of Maryland.

19.     Defendant Richard O. Berndt ("Berndt") is a MuniMae director and has been since 1996.  Because of Berndt's position, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of MuniMae including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith.  During the Relevant Period, Berndt participated in the issuance of improper statements, including the preparation of the improper press releases and other statements and approval of SEC filings made to the press, securities analysts and MuniMae shareholders.  Defendant Berndt is a citizen of Maryland.

20.     Defendant Robert S. Hillman ("Hillman") is a MuniMae director and has been since 1996.  Hillman is Chairman of MuniMae's Compensation Committee and has been since 2003, and is a member of MuniMae's Audit Committee and has been since 2004.  Because of Hillman's positions, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or

should have known the adverse, non-public information about the business of MuniMae including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith.   During the Relevant Period, Hillman participated in the issuance of improper statements, including the preparation of the improper press releases and other statements and approval of SEC filings made to the press, securities analysts and MuniMae shareholders. Defendant Hillman is a citizen of Maryland.

21.     Defendant Douglas A. McGregor ("McGregor") is a MuniMae director and has been since 1999.  McGregor is also a member of MuniMae's Compensation Committee and has been since 2003.  Because of McGregor's positions, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of MuniMae including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith.   During the Relevant Period, McGregor participated in the issuance of improper statements, including the preparation of the improper press releases and other statements and approval of SEC filings made to the press, securities analysts and MuniMae shareholders.  Defendant McGregor is a citizen of Florida.

22.     Defendant Eddie C. Brown ("Brown") is a MuniMae director and has been since 2003.  Brown is also a member of MuniMae's Audit Committee and has been since March 25, 2003. Because of Brown's positions, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of MuniMae including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith.   During the Relevant Period, Brown participated in the issuance of improper statements, including the preparation of the improper press

8

releases and other statements and approval of SEC filings made to the press, securities analysts and MuniMae shareholders.  Defendant Brown is a citizen of Maryland.

23.     Defendant Fred N. Pratt, Jr. ("Pratt") is a MuniMae director and has been since July 2003.  Pratt is also Chairman of MuniMae's Audit Committee and has been since 2005 and was also a member of the Audit Committee since at least April 2004.  Because of Pratt's positions, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of MuniMae including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith.  During the Relevant Period, Pratt participated in the issuance of improper statements, including the preparation of the improper press releases and other statements and approval of SEC filings made to the press, securities analysts and MuniMae shareholders.  Defendant Pratt is a citizen of Massachusetts.

24.     Defendant Arthur S. Mehlman ("Mehlman") is a MuniMae director and has been since November 2004.  Mehlman is also a member of MuniMae's Audit Committee and has been since November 2004.  Because of Mehlman's positions, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of MuniMae including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith.  During the Relevant Period, Mehlman participated in the issuance of improper statements, including the preparation of the improper press releases and other statements and approval of SEC filings made to the press, securities analysts and MuniMae shareholders.  Defendant Mehlman is a citizen of Maryland.

25.     Defendant Barbara B. Lucas ("Lucas") is a MuniMae director and has been since August 2005.  Lucas is also a member of MuniMae's Compensation Committee and has been since August 2005.  Because of Lucas' positions, she knew, consciously disregarded, was reckless and

grossly negligent in not knowing or should have known the adverse, non-public information about the business of MuniMae including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to her in connection therewith.  During the Relevant Period, Lucas participated in the issuance of improper statements, including the preparation of the improper press releases and other statements and approval of SEC filings made to the press, securities analysts and MuniMae shareholders.  Defendant Lucas is a citizen of Maryland.

26.     Defendant William S. Harrison ("Harrison") was MuniMae's Executive Vice President and Chief Financial Officer from April 2001 to January 2006 and Secretary from 2001 to October 2003.  Because of Harrison's positions, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of MuniMae including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings, as well as reports and other information provided to him in connection therewith.  During the Relevant Period, Harrison participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and MuniMae shareholders.  Defendant Harrison received the following compensation:

| Fiscal Year | Salary | Bonus | Securities Underlying Options | All Other Compensation |
|---|---|---|---|---|
| 2005 | $312,500 | $200,000 | - | $14,758 |
| 2004 | $287,500 | $374,998 | - | $15,715 |
| 2003 | $255,625 | $233,330 | - | $11,364 |
| 2001 | $173,077 | $80,000 | 50,000 | $9,062 |

Defendant Harrison sold 50,240 shares of MuniMae stock for $1,307,188 in proceeds while in possession of material non-public information.  Defendant Harrison is a citizen of Maryland.

27.     Defendant Angela A. Barone ("Barone") was MuniMae's Vice President of Finance and Budgeting from about March 2002 to at least March 2003 and Vice President of Finance and Administration from about March 2000 to at least March 2002.  Because of Barone's positions, she

10

knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of MuniMae including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings, as well as reports and other information provided to her in connection therewith.  During the Relevant Period, Barone participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and MuniMae shareholders.  Defendant Barone sold 10,000 shares of MuniMae stock for $255,321 in proceeds while in possession of material non-public information.  Defendant Barone is a citizen of Maryland.

28.     Defendant Melanie M. Lundquist ("Lundquist") was MuniMae's Chief Financial Officer and Executive Vice President from January 2006 to July 2007 and Senior Vice President and Chief Accounting Officer from March 2005 to January 2006.  Because of Lundquist's positions, she knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of MuniMae including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings, as well as reports and other information provided to her in connection therewith.   During the Relevant Period, Lundquist participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and MuniMae shareholders.  Defendant Lundquist is a citizen of Maryland.

29.     Defendant Robert J. Banks ("Banks") was MuniMae's Vice Chairman from 2003 to December 2004; Executive Vice Chairman from 2001 to 2003; and a director from 1999 to December 2004.  Because of Banks' positions, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of MuniMae including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate

11

officers and employees, attendance at management and Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith.  During the Relevant Period, Banks participated in the issuance of improper statements, including the preparation of the improper press releases and other statements and approval of SEC filings made to the press, securities analysts and MuniMae shareholders.   Defendant Banks received the following compensation:

| Fiscal Year | Salary | Bonus | Securities Underlying Options | All Other Compensation |
|---|---|---|---|---|
| 2002 | $275,600 | $50,000 | - | $2,955 |
| 2001 | $266,094 | $90,000 | - | $3,114 |
| 2000 | $252,897 | $90,000 | 87,500 | $3,516 |
| 1999 | $47,400 | - | - | $13,500 |

Defendant Banks sold 183,500 shares of MuniMae stock for $4,560,078 in proceeds while in possession of material non-public information.  Defendant Banks is a citizen of Florida.

30.     The defendants identified in ¶¶13, 17-25, 29 are referred to herein as the "Director Defendants."  The defendants identified in ¶¶13-17, 26-29 are referred to herein as the "Officer Defendants."  The defendants identified in ¶¶13-17, 26-27, 29 are referred to herein as the "Insider Selling Defendants."  Collectively, the Director Defendants, the Officer Defendants and the Insider Selling Defendants are referred to herein as the "Individual Defendants."

### DUTIES OF THE INDIVIDUAL DEFENDANTS

31.     By reason of their positions as officers, directors and/or fiduciaries of MuniMae and because of their ability to control the business and corporate affairs of MuniMae, the Individual Defendants owed MuniMae and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage MuniMae in a fair, just, honest and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of MuniMae and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

32.     Each director and officer of the Company owes to MuniMae and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of

fair dealing.  In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's revenue, margins, operations, performance, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

33.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of MuniMae, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.  Because of their advisory, executive, managerial and directorial positions with MuniMae, each of the Individual Defendants had access to adverse non-public information about the financial condition, operations, and improper representations of MuniMae.

34.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of MuniMae, and was at all times acting within the course and scope of such agency.

35.     To discharge their duties, the officers and directors of MuniMae were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of MuniMae were required to, among other things:

(a)     refrain from acting upon material inside corporate information to benefit themselves;

(b)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

(c)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and financial results and ensuring that the Company maintained an

adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e)     remain informed as to how MuniMae conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with securities laws; and

(f)     ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable laws, rules and regulations.

36.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of MuniMae, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and/or directors of the Company during the Relevant Period have been ratified by the remaining Individual Defendants who collectively comprised all of MuniMae's Board during the Relevant Period.

37.     The Individual Defendants breached their duties of loyalty and good faith by allowing defendants to cause, or by themselves causing, the Company to misrepresent its business prospects, as detailed herein *infra*, and by failing to prevent the Individual Defendants from taking such illegal actions.  In addition, as a result of defendants' illegal actions and course of conduct during the Relevant Period, the Company is now the subject of class action lawsuits that allege violations of securities laws.  As a result, MuniMae has expended, and will continue to expend, significant sums of money.

**CONSPIRACY, AIDING AND ABETTING AND CONCERTED ACTION**

38.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

39.     During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did: (i) conceal the fact that the Company was improperly misrepresenting its business prospects and financial results; (ii) enhance the Individual Defendants' executive and directorial positions at MuniMae and the profits, power and prestige that the Individual Defendants enjoyed as a result of holding these positions; (iii) allow certain defendants to sell over $14.8 million of their personally held shares; (iv) improperly direct the Company to repurchase $1.3 million of its own shares; and (v) deceive the investing public, including shareholders of MuniMae, regarding the Individual Defendants' management of MuniMae's operations, the Company's financial health and stability, and its future business prospects that had been misrepresented by defendants throughout the Relevant Period.  In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

40.     The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct during the Relevant Period.  During this time, the Individual Defendants caused the Company to conceal the true fact that MuniMae was misrepresenting its business prospects.

41.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets and unjust enrichment; to conceal adverse information concerning the Company's operations, financial condition and future business prospects; and to facilitate the sale of over $14.8 million of their personally held shares and the repurchase of $1.3 million of the Company's shares at artificially inflated prices.

42.     The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently release improper statements.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

43.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## IMPROPER STATEMENTS

44.     The Individual Defendants by their fiduciary duties of care, good faith and loyalty owe to MuniMae a duty to ensure that the Company's public filings and statements fairly represent the operations and business prospects of the Company.  In order to adequately carry out these duties, it is necessary for the Individual Defendants to know and understand the material, non-public information that should be either disclosed or omitted from the Company's public statements.

45.     This material, non-public information included MuniMae's contractual arrangements with hundreds of VIEs.  Despite small minority equity interests in these VIEs, MuniMae because of its other financial interests in these entities will have to absorb a majority of the expected losses associated with these entities.  MuniMae's public statements concerning these entities was deficient because those statements failed to disclose  the nature of MuniMae's involvement with these entities, the purpose, size and activities of these entities and MuniMae's exposure to loss as a result of its involvement in these entities.

46.     The Director Defendants owed a fiduciary duty to MuniMae to ensure that the Company properly disclosed all material facts concerning the Company.  Furthermore, defendants Baum, Brown, Hillman, Mehlman and Pratt, as members of the Audit Committee, had a special duty to know and understand this material information as set out in the Audit Committee's charter which provides that the Audit Committee is responsible for reviewing and discussing: (i) the annual and

quarterly financial statements; (ii) the integrity of MuniMae's financial reporting process and controls; (iii) MuniMae's policies with respect to risk assessment and risk management, including major financial accounting exposures and steps management has taken to control such risks; and (iv) earnings press releases, earnings guidance and information provided to analysts and rating agencies.

47.     The Officer Defendants, as MuniMae officers, had ample opportunity to discuss this material information with their fellow officers at management meetings and via internal corporate documents and reports. Moreover, the Director Defendants, as directors of MuniMae, had ample opportunity to discuss this material information with management and fellow directors at any of the Board meetings that occurred during the Relevant Period, as well as at meetings of committees of the Board. Despite these duties, the Individual Defendants negligently, recklessly and/or intentionally caused or allowed, by their actions or inactions, the following improper statements to be disseminated by MuniMae to the investing public and the Company's shareholders during the Relevant Period.

48.     On April 22, 2003, the Individual Defendants caused or allowed MuniMae to issue a press release announcing its first fiscal quarter 2003 earnings. For the quarter, MuniMae reported net income of $13.9 million and a 6% increase to its cash available to pay dividends. Defendant Joseph commented in the press release that "we are quite pleased to have increased our CAD per share 6% while raising MuniMae's dividend for the 25th consecutive quarter." The press release provided as follows:

> Municipal Mortgage & Equity, LLC today reported net income allocated to common shares of $13.9 million for the quarter ended March 31, 2003, a decrease of 7% as compared to the same period in 2002. Diluted earnings per share were $0.50 for the quarter, compared to $0.62 for the same period in 2002.
>
> Cash Available for Distribution ("CAD"), the primary measure of the Company's dividend paying ability, increased 16% for the quarter ended March 31, 2003 compared to the same period in 2002. CAD per common share increased 6% compared to the same period in 2002. The Board of Directors raised the quarterly dividend to common shares to $0.4450, an increase of 2% over the same period in 2002.
>
> MuniMae Chairman and CEO Mark K. Joseph, commenting on the results, stated, "The first quarter of every year has typically been the most difficult for us because the funding and development approvals our clients need are concentrated in the second half of the year. Given this, we are quite pleased to have increased our

CAD per share 6% while raising MuniMae's dividend for the 25th consecutive quarter."

49.      On July 17, 2003, the Individual Defendants caused or allowed MuniMae to issue a press release announcing its second fiscal quarter 2003 earnings.  For the quarter, MuniMae reported net income of $30.6 million and a 6% increase in cash available for distribution.  Defendant Joseph commented in the press release that "[w]e are pleased to announce the 26th consecutive increase to our dividend.  We are pleased with our second quarter performance as well."  The press release provided as follows:

> Municipal Mortgage & Equity, LLC, known as MuniMae, reported net income allocated to common shares of $30.6 million for the quarter ended June 30, 2003, compared to $2.9 million for the same period in 2002.  Diluted earnings per share were $1.05 for the quarter, compared to $0.11 for the same period in 2002.
>
> Cash Available for Distribution ("CAD"), the primary measure of the Company's distribution paying ability, increased 18% for the quarter ended June 30, 2003 compared to the same period in 2002. AD per common share increased 6% compared to the same period in 2002.  The Board of Directors raised the quarterly distribution to common shares to $0.4475, an increase of 2% over the same period in 2002.
>
> Mark K. Joseph, Chairman of the Board and CEO of MuniMae, commented, "We are pleased to announce the 26th consecutive increase to our dividend.  We are pleased with our second quarter performance as well.  MuniMae continues to diversify its product base, and as announced previously, has purchased the Housing and Community Investing (HCI) unit of Lend Lease Real Estate Investments, formerly known as Boston Financial Group. HCI is a market leader in the syndication of low-income housing tax credits and we expect their strong franchise to contribute meaningfully to our continuing efforts to increase our cash available for distribution, or CAD, and shareholder value."

50.      On October 16, 2003, the Individual Defendants caused or allowed MuniMae to issue a press release announcing its third fiscal quarter 2003 earnings.  For the quarter, MuniMae reported net income of $18.1 million and a 4% increase in cash available for distribution.  Defendant Joseph commented in the press release that "[t]his has been a very productive quarter for MuniMae."  The press release provided as follows:

> Municipal Mortgage & Equity, LLC, known as MuniMae, reported net income allocated to common shares of $18.1 million for the quarter ended September 30, 2003, compared to $0.2 million for the same period in 2002.  Diluted earnings per share were $0.62 for the quarter, compared to $0.01 for the same period in 2002. The substantial changes in these GAAP numbers, which do not impact our cash available for distribution described below, resulted primarily from a $13.4 million improvement in unrealized gains on derivative securities between the third quarter of 2002 and the latest quarter.

Cash Available for Distribution ("CAD") to common shares, the primary measure of the Company's distribution paying ability, increased 19% for the quarter ended September 30, 2003 compared to the same period in 2002. CAD per common share increased 4% compared to the same period in 2002. The Board of Directors raised the quarterly distribution to holders of our common shares to $0.45, an increase of 2% over the same period in 2002.

Mark K. Joseph, Chairman of the Board and CEO of MuniMae, commented, "This has been a very productive quarter for MuniMae. We are pleased to have raised our distribution for the 27th consecutive quarter. In addition, the Company closed the acquisition of the HCI unit of Lend Lease Corporation Limited. After the completion of the third quarter, on October 15th, the Company completed another offering of common equity, which generated $88.4 million in gross proceeds after the underwriters exercised their full overallotment

51.     On March 1, 2004, the Individual Defendants caused or allowed MuniMae to issue a press release announcing its fourth fiscal quarter and full year 2003 earnings. For the year, MuniMae reported net earnings of $72.5 million and a 6.5% increase in cash available for distribution. Defendant Joseph commented in the press release that "I am pleased to report that MuniMae has marked 2003 as another year of growth for the Company." The press release provided as follows:

Municipal Mortgage & Equity, LLC, known as MuniMae, reported net income allocated to common shares of $72.5 million for the year ended December 31, 2003, compared to $28.8 million for the same period in 2002. Diluted earnings per share were $2.44 for the year, compared to $1.13 for the same period in 2002. The substantial changes in GAAP earnings resulted primarily from a $25.7 million transaction recorded as discontinued operations and a $21.2 million decrease in losses on derivative securities.

Cash Available for Distribution ("CAD") to common shares, the primary measure of the Company's distribution paying ability, increased 26% for the year ended December 31, 2003 compared to the same period in 2002. (The Company uses CAD as its primary measure of performance and believes it to be illustrative of its distribution-paying ability. CAD differs from net income because of variations between GAAP income and actual cash received. These variations are described in the note to the attached calculation of CAD statement.) CAD per common share for the year ended December 31, 2003 of $2.13 increased 6.5% compared to the same period in 2002. The Board of Directors raised the quarterly distribution to holders of our common shares to $0.4525, an increase of 2% over the same period in 2002. For the year, MuniMae paid distributions totaling $1.795 per common share compared to $1.755 per common share in 2002.

MuniMae Chairman and CEO Mark K. Joseph, commenting on the results, stated, "I am pleased to report that MuniMae has marked 2003 as another year of growth for the Company. Year-end CAD per share exceeded analyst consensus of $2.10, while our total production rose 16% over 2002. MuniMae has successfully progressed from $230 million in total assets since listing in 1996 to over $2 billion at year-end 2003, with an 18% average annual total return to shareholders over the same period."

52.     On May 3, 2004, the Individual Defendants caused or allowed MuniMae to issue a press release announcing its first fiscal quarter 2004 earnings.  For the quarter, MuniMae announced net income of $1.2 million and cash available for distribution per common share of $0.37. Defendant Joseph commented in the press release as follows: "While our CAD per share for the first quarter of 2004 did come in below the prior-year results, it significantly exceeded our expectations." The press release provided as follows:

> Municipal Mortgage & Equity, LLC, known as MuniMae, reported net income allocated to common shares of $1.2 million for the quarter ended March 31, 2004 compared to $13.9 million for the same period in 2003. Diluted earnings per share were 0.04 for the quarter, compared to $0.50 for the same period in 2003.
>
> The Company reported Cash Available for Distribution ("CAD") per common share of $0.37 for the quarter ended March 31, 2004, a decrease of 26% as compared with CAD per common share of $0.50 for the same period in 2003. (The Company uses CAD as its primary measure of performance and believes it to be illustrative of its distribution-paying ability. CAD differs from net income because of variations between GAAP income and actual cash received. These variations are described in the note to the attached calculation of CAD statement.)
>
> MuniMae Chairman and CEO Mark K. Joseph, commenting on the results, stated, "We are very pleased with the Company's results for the first quarter.  As we had previously advised our investors, we expected first quarter results to come in below the prior-year figures due to seasonality in our tax credit equity syndication business, which we significantly expanded through a July 2003 acquisition. While our CAD per share for the first quarter of 2004 did come in below the prior-year results, it significantly exceeded our expectations. This was largely due to strong results in our tax credit equity unit during the quarter. Based in part on the Company's results and our outlook for the remainder of the year, our Board of Directors recently raised the quarterly distribution to holders of our common shares to $0.4575, an increase of 3% over the same period in 2003."

53.     On August 2, 2004, MuniMae issued its fiscal second quarter 2004 earnings press release.  For the quarter, MuniMae announced net income of $11.2 million and cash available for distribution of $0.61 per share.   In the press release, defendant Joseph commented: "We are extremely pleased to have been able to raise our distribution for thirty consecutive quarters. So far this year we are outperforming our own and analysts' expectations, particularly in our tax credit equity business, and we expect to finish the year somewhere between 2 and 4 percent above analyst current consensus expectations of $2.22."  The press release provided as follows:

> Municipal Mortgage & Equity, LLC, known as MuniMae, reported net income allocated to common shares of $11.2 million for the quarter ended June 30, 2004 compared to $31.1 million for the same period in 2003. Diluted earnings per share were $0.32 for the quarter, compared to $1.06 for the same period in 2003.

The Company reported Cash Available for Distribution ("CAD") per common share of $0.61 for the quarter ended June 30, 2004, an increase of 17% as compared with CAD per common share of $0.52 for the same period in 2003. (The Company uses CAD as its primary measure of performance and believes it to be illustrative of its distribution-paying ability. The differences between GAAP and CAD are described in the note to the attached calculation of CAD statement.)

MuniMae Chairman and CEO Mark K. Joseph, commenting on the results, stated, "We are extremely pleased to have been able to raise our distribution for thirty consecutive quarters. So far this year we are outperforming our own and analysts' expectations, particularly in our tax credit equity business, and we expect to finish the year somewhere between 2 and 4 percent above analyst current consensus expectations of $2.22."

54.     On September 23, 2004, MuniMae announced that it was restating its earnings for the first and second quarters for fiscal 2004.  This restatement was to correct for deferred compensation payable to MuniMae's Chairman and CEO, defendant Joseph.  The accounting error related to the deferred compensation totaled $3 million.

55.     On November 10, 2004, the Individual Defendants caused or allowed MuniMae to issue its third fiscal quarter 2004 earnings press release.  For the quarter, MuniMae reported net income of $11.6 million and cash available for distribution of $0.72 per common share.  Defendant Joseph commented that "MuniMae is pleased to continue its long history of steady growth in cash generated by our businesses."  The press release provided as follows:

Municipal Mortgage & Equity, LLC, known as MuniMae, reported net income of $11.6 million for the quarter ended September 30, 2004, as compared to $18.1 million for the same period in 2003. Diluted earnings per share were $0.33 for the quarter, compared to $0.62 for the same period in 2003.

The Company reported Cash Available for Distribution ("CAD") per common share of $0.72 for the quarter ended September 30, 2004, an increase of 36% as compared with CAD per common share of $0.53 for the same period in 2003. (The Company uses CAD as its primary measure of performance and believes it to be illustrative of its distribution-paying ability. The differences between GAAP and CAD are described in the note to the attached calculation of CAD statement.)

MuniMae Chairman and CEO Mark K. Joseph, commenting on the results, stated, "MuniMae is pleased to continue its long history of steady growth in cash generated by our businesses. The Company has recently declared its 31st consecutive increase in its distribution to common shareholders. Despite higher regulatory and compliance costs, particularly those related to the Sarbanes-Oxley Act of 2002 our management team continues to deliver strong results."

56.     On March 16, 2005, the Individual Defendants caused or allowed MuniMae to issue its fourth quarter and full fiscal year earnings press release.  For the year, MuniMae reported net income of $27 million and cash available for distribution of $2.33 per share.  The press release also

reported that MuniMae had adopted FASB Interpretation Number ("FIN") 46R, a rule promulgated by the FASB to curb abuses from companies such as Enron that used various entities to hide losses. The Company's adoption of FIN 46R was the reason that the Company only reported earnings of $27 million for fiscal 2004 compared to earnings of $72.5 million for fiscal 2003. According to the press release, syndication and other certain fees earned on VIEs had been eliminated by the new accounting. Defendant Falcone commented: "By capitalizing on the synergies between our tax credit business and our tax-exempt and taxable lending businesses, we successfully structured over $2.5 billion in multifamily and other real estate investments, which is a 68% increase over 2003 production." The press release provided as follows:

> MuniMae (the "Company") today announced financial results for its fourth quarter and year ended December 31, 2004.
>
> "By capitalizing on the synergies between our tax credit business and our tax-exempt and taxable lending businesses, we successfully structured over $2.5 billion in multifamily and other real estate investments, which is a 68% increase over 2003 production," commented Michael Falcone, Chief Executive Officer of MuniMae. He added, "As a result, our Cash Available for Distribution ("CAD") per common share grew 9% over 2003, representing our 8th consecutive year of CAD per share growth."
>
> GAAP Results of Operations
>
> As previously reported, the Company adopted FASB Interpretation No. 46R, "Consolidation of Variable Interest Entities" effective March 31, 2004, which required us to consolidate certain tax credit equity funds in which we have a 1% or less general partnership interest. As a result of consolidating these funds, syndication and certain other fees earned on these funds have been eliminated. These changes, coupled with financing accounting required for guaranteed tax credit equity funds, make the year over year comparisons difficult. Accordingly, we have presented adjusted amounts in an effort to improve comparability as between 2004 and 2003. These amounts are not in accordance with generally accepted accounting principles. It should be noted that, due to other significant changes in the Company's business and other new accounting principles, even these adjusted figures are not fully comparable.
>
> For the three and twelve months ended December 31, 2004, MuniMae earned net income of approximately $5.6 million and $27.0 million, respectively, down from $9.3 million and $72.5 million for the three and twelve months ended December 31, 2003, respectively. Adjusted to exclude the impact of certain consolidated tax credit equity funds and the financing method of accounting related to guaranteed tax credit equity funds, MuniMae earned net income of $21.8 million and $61.1 million for the three and twelve months ended December 31, 2004, respectively, representing an increase of approximately 55% over similarly adjusted GAAP net income for the three months ended December 31, 2003 and a decrease of 17% for the twelve months ended December 31, 2003.

*   *   *

For the three and twelve months ended December 31, 2004, MuniMae's CAD, a performance measure, was $22.2 million and $81.7 million, respectively. MuniMae's 2004 CAD results represent increases of approximately 17% and 28%, as compared with $19.0 million and $63.8 million for the three and twelve months ended December 31, 2003, respectively. On a per share basis, CAD was $0.63 and $2.33 for the three and twelve months ended December 31, 2004, respectively, representing increases of approximately 9% as compared to $0.58 and $2.13 for the three and twelve months ended December 31, 2003, respectively.

\* \* \*

Investing Segment

During the three months ended December 31, 2004, MuniMae acquired tax-exempt bonds and entered into forward funding commitments for financings totaling approximately $145.4 million in par value, which is a 5% increase as compared to $138.1 million for the three months ended December 31, 2003.

For the twelve months ended December 31, 2004, MuniMae acquired tax-exempt bonds and entered into forward funding commitments for financings totaling approximately $401.6 million, which represents a 60% increase as compared to $250.4 million for the twelve months ended December 31, 2003.

Of the 2004 total, $321.1 million of the financings were tax-exempt bonds secured by affordable multifamily housing properties. The remaining $80.5 million were investments in Community Development District Bonds ("CDD") secured by assessments pledged by local governments for community infrastructure projects.

Tax Credit Equity Segment

MuniMae's Tax Credit Equity segment ended 2004 on a very strong note. During the three months ended December 31, 2004, the Company raised tax credit equity of approximately $487.9 million bringing the Company's total tax credit equity raised during 2004 to approximately $1.1 billion. In addition to representing an increase of 99% over 2003, this accomplishment distinguished MuniMae as one of only two companies to surpass the $1 billion mark in tax credit equity raised during a calendar year. MuniMae had approximately $6 billion in tax credit equity assets under management as of December 31, 2004.

In addition, during the fourth quarter, the Company made equity investments in tax credit properties totaling $303.2 million. These equity investments brought the Company's total twelve-month investment activity to $846.3 million, which is an increase of approximately 86% as compared to 2003 and, we believe, a record breaking amount for the industry for a single year.

Other accomplishments of the Tax Credit Equity segment in 2004 included the establishment of a guaranteed tax credit equity program with Merrill Lynch, through which the Company raised $165 million in investor equity, and the development and implementation of a joint program to improve our marketing of tax credit equity and bond financing to developers.

Real Estate Finance Segment

MuniMae's Real Estate Finance segment production was approximately $348.1 million during the three months ended December 31, 2004, bringing the segment's total production for the twelve months ended December 31, 2004, to approximately $1.0 billion. This represents a 45% increase over the 2003 production

volume and brought the segment's total assets under management to approximately $2.1 billion as of December 31, 2004.

57.     Also on March 16, 2005, the Individual Defendants caused or allowed MuniMae to file a Form 10-K annual report.   The Form 10-K disclosed that MuniMae was the primary beneficiary of a number of VIEs.  According to the filing, these VIEs included general partnership interests in low-income tax credit equity funds and real estate project partnerships and interests in bond securitization trusts.  As a result of MuniMae's application of FIN 46R, the Company recorded over $327 million worth of debt.  In particular, the filing disclosed as follows:

> FIN 46 requires the consolidation of a Company's equity investment in a variable interest entity ("VIE") if the Company is the primary beneficiary of the VIE and if risks are not effectively dispersed among the owners of the VIE. The Company is considered to be the primary beneficiary of the VIE if the Company absorbs the majority of the losses of the VIE. The Company determined its interests in bond securitizations represented equity interests in VIEs, and the Company was the primary beneficiary of the VIE and, therefore was required to consolidate the securitization trusts as of December 31, 2003. In December 2003, FASB approved various amendments to FIN 46 and released FIN 46R. The Company has general partnership interests in low-income housing tax credit equity funds where the respective funds have one or more limited partners. The determination of whether the Company is the primary beneficiary of (and must consequently consolidate) a given tax credit equity fund depends on a number of factors, including the number of limited partners and the rights and obligations of the general and limited partners in that fund. Upon adoption of FIN 46R in March 2004, the Company determined that it was the primary beneficiary in certain of the tax credit equity funds it originated where there are multiple limited partners. As a result, the Company consolidated these tax credit equity funds at March 31, 2004. At times, the Company takes ownership of the general partnership interest in the underlying Project Partnerships in which the tax credit equity funds hold investments. For those property-level general partnership interests the Company has discontinued the equity method of accounting and consolidated the underlying Project Partnership pursuant to FIN 46R. **_As of December 31, 2004, the Company recorded approximately $327.0 million of debt as a result of the consolidation of tax credit equity funds and Project Partnerships pursuant to FIN 46R._** This debt is nonrecourse to the Company. The effects of FIN 46R pertaining to the tax credit equity funds and Project Partnerships are not considered under certain Company debt covenant compliance computations.

> *   *   *

> The Company's interests in bond securitizations represent equity interests in VIEs, and the Company is the primary beneficiary of those VIEs. The Company determined that its bond securitization trusts were special purpose entities ("SPEs") and did not qualify for the deferral. Therefore, these securitization trusts were consolidated at December 31, 2003. The Company examined each of its SPEs to determine if it met the definition of a qualified SPE. Certain of the Company's SPEs are qualified SPEs and are not consolidated accordingly.

58.     On May 2, 2005, the Individual Defendants caused or allowed MuniMae to issue a press release announcing its first fiscal quarter 2005 earnings.  For the quarter, MuniMae reported

net income of $2.2 million and cash available for distribution of $0.42 per share.  Defendant Falcone

commented: "We had a productive first quarter and remain on track to meet our overall earnings per

share and CAD per share targets for fiscal year 2005."  The press release provided as follows:

> MuniMae, a leading publicly traded real estate finance and investment management company, today announced financial results for the first fiscal quarter.

> MuniMae CEO and President Michael Falcone stated, "We had a productive first quarter and remain on track to meet our overall earnings per share and CAD per share targets for fiscal year 2005. Our business volumes continue to grow in our major business segments. In addition, during the quarter we completed a successful public offering of common equity and a private placement of subsidiary trust preferred securities, which together raised $118 million of capital. Finally, we closed a small but strategically important acquisition of an established business, which we have re-branded MMA Realty Capital and which we expect to form the cornerstone of an expanded fund management business targeting pension funds, insurance companies and other institutional investors."

> GAAP Results of Operations

> For the three months ended March 31, 2005, MuniMae's net income was $2.2 million, up from a net loss of $1.3 million for the three months ended March 31, 2004. Adjusted to exclude the impact of certain consolidated tax credit equity funds and the financing method of accounting related to guaranteed tax credit equity funds, MuniMae's net income was $12.7 million for the three months ended March 31, 2005, representing an increase of 208% over similarly adjusted GAAP net income for the same period in 2004.

> *  *  *

> CAD Results of Operations

> For the three months ended March 31, 2005, MuniMae's Cash Available for Distribution ("CAD"), a performance measure, was $16.1 million, representing an increase of approximately 24% as compared to $13.0 million for the three months ended March 31, 2004. On a per share basis, CAD was $0.42 for the three months ended March 31, 2005, representing an increase of approximately 14% as compared to $0.37 for the three months ended March 31, 2004.

> *  *  *

> Production Summary

> Investing Segment: During the three months ended March 31, 2005, MuniMae acquired tax-exempt bonds and entered into forward funding commitments for financings totaling approximately $55.3 million in par value, which is a 12% increase as compared to $49.3 million for the three months ended March 31, 2004. All of the first quarter 2005 financings were tax-exempt multifamily revenue bonds associated with low-income housing tax credits.

> Tax Credit Equity Segment: During the three months ended March 31, 2005, the Company raised $107.4 million in tax credit equity, representing an 18% increase over the three months ended March 31, 2004. In the first quarter of 2005, MuniMae

also closed its largest tax credit equity fund to date, raising $319 million from sixteen corporate investors.

Real Estate Finance Segment: MuniMae's Real Estate Finance segment production was approximately $161.3 million during the three months ended March 31, 2005, which represents a 22% decrease as compared with the three months ended March 31, 2004. If not for a single $66.7 million construction loan transaction closed in the first quarter of 2004, we would have shown a year-over-year increase in first quarter production of 14% for this segment.

59.     On July 28, 2005, the Individual Defendants caused or allowed MuniMae to issue an earnings press release for its second fiscal quarter 2005.  For the quarter, MuniMae reported net earnings of $23.6 million and cash available for dividends of $0.55 per share.  Defendant Falcone commented: "MuniMae had a productive second quarter and, though our year-to-date CAD per share is essentially flat as compared with the first half of 2004, it was above our internal budget."  The press release provided as follows:

MuniMae, a leading publicly traded real estate finance and investment management company, today announced financial results for the second fiscal quarter. For the quarter, the Company reported GAAP diluted earnings per share, excluding the effects of FIN 46 and FAS 66, of $0.58, an increase of 5% over the $0.55 per share for the second quarter of 2004. The Company reported Cash Available for Distribution, or CAD, for the second quarter of $0.55 per share, a decrease of 10% as compared with CAD per share of $0.61 for the second quarter of 2004.

Commenting on the quarter and year-to-date results, MuniMae CEO and President Michael Falcone stated, "MuniMae had a productive second quarter and, though our year-to-date CAD per share is essentially flat as compared with the first half of 2004, it was above our internal budget. Moreover, based on a review of our pipeline and business prospects for the remainder of the year, we are on track to meet or slightly exceed the current analysts' consensus CAD estimate of $2.41 for fiscal 2005."

Mr. Falcone added, "We are increasingly seeing the benefits of the diversification strategy we have pursued for the past six years. While the persistent low interest rate environment is causing pricing pressure in some of our business lines, particularly in our tax-exempt bond business, we are simultaneously benefiting from a strong seller's market for multifamily properties, and we are seeking to take advantage of this market to harvest significant gains on some of our equity investments and bonds. The regular realization of gains on sale has been part of our overall business plan for several years, and the pricing we have seen this year has generally met or exceeded our going-in return expectations for these investments. We remain committed to our strategy of diversifying our product offerings while building scale, both through acquisitions and through organic growth in our existing businesses. In this connection, we are very pleased to have closed the Glaser Financial acquisition, which gives us new product capabilities, additional scale in our DUS lending franchise, geographic diversification in our loan servicing portfolio and a strong management team."

\*   \*   \*

GAAP Results of Operations

26

For the three and six months ended June 30, 2005, MuniMae's net income was $23.6 million and $25.8 million, which represents an increase of 111% and 161% over net income for the three and six months ended June 30, 2004, respectively. Adjusted to exclude the impact of certain consolidated tax credit equity funds and real estate operating partnerships as a result of the application of FIN 46 and the financing method of accounting related to guaranteed tax credit equity funds due to FAS 66, MuniMae's net income was $22.1 million and $34.6 million for the three and six months ended June 30, 2005, respectively, representing an increase of 15% and 48% over similarly adjusted net income for the same periods in 2004.

\* \* \*

CAD Results of Operations

For the three and six months ended June 30, 2005, MuniMae's CAD to common shares, a performance measure, was $21.0 million and $37.1 million as compared to $21.3 million and $34.3 million for the three and six months ended June 30, 2004, respectively. On a per share basis, CAD was $0.55 and $0.98 for the three and six months ended June 30, 2005, as compared to $0.61 and $0.98 for the three and six months ended June 30, 2004, respectively.

\* \* \*

Production Summary

Investing Segment: For the three and six months ended June 30, 2005, MuniMae acquired tax-exempt bonds and entered into forward funding commitments totaling approximately $40.7 million and $96.0 million in par value, representing a decrease of 67% and 44% as compared to the three months and six months ended June 30, 2004, respectively. All of the second quarter 2005 financings were tax-exempt multifamily revenue bonds associated with low-income housing tax credits syndicated by MuniMae and other third party syndicators.

Tax Credit Equity Segment: For the three and six months ended June 30, 2005, MuniMae raised $215.3 million and $322.7 million of tax credit equity, representing a decrease of 12% and 4% as compared to the three months and six months ended June 30, 2004, respectively. For the three and six months ended June 30, 2005, MuniMae invested $220.2 million and $394.2 million in tax credit properties, representing an increase of 15% and 18% as compared to the three months and six months ended June 30, 2004, respectively.

Real Estate Finance Segment: For the three and six months ended June 30, 2005, MuniMae's Real Estate Finance segment production was $315.4 million and $476.8 million, representing an increase of 4% and a decrease of 7% as compared to the three months and six months ended June 30, 2004, respectively.

60.    On November 7, 2005, the Individual Defendants caused or allowed MuniMae to issue an earnings press release announcing for its third fiscal quarter 2005. For the quarter, MuniMae reported net income of $20.4 million and cash available for distribution of $0.76 per share. Defendant Falcone commented: "We remain confident in our outlook for the rest of the year, and based on our current pipeline, we expect CAD per share for the fiscal year 2005 to be at least $2.43." The press release provided as follows:

27

MuniMae (the "Company"), a leading publicly traded real estate finance and investment management company, today announced financial results for the third fiscal quarter of 2005.

The Company reported diluted earnings per share of $0.52 and $1.21 for the three and nine months ended September 30, 2005, representing an increase of 58% and 95%, respectively, over diluted earnings per share for the comparable periods in 2004. In addition, the Company reported Cash Available for Distribution, or CAD, of $0.76 and $1.73 per share for the three and nine months ended September 30, 2005, representing increases of 6% and 2%, respectively, over CAD per share for the comparable periods in 2004.

The distribution of $0.4875 per common share, payable on November 11, 2005, to shareholders of record as of October 31, 2005, marked a record 35th consecutive increase in the Company's quarterly distribution and represents an 8% annualized yield based on the $24.22 per share closing price on November 7, 2005.

Commenting on the quarter and year-to-date results, MuniMae CEO and President Michael Falcone stated, "Although our tax-exempt bond originations in 2005 have fallen significantly below 2004 levels, production volumes remain strong in our other lines of business, and the continued low interest rate environment has enabled us to sell selected investments at very attractive cap rates. We remain confident in our outlook for the rest of the year, and based on our current pipeline, we expect CAD per share for the fiscal year 2005 to be at least $2.43."

\* \* \*

Net Income and Adjusted Net Income

For the three months ended September 30, 2005, net income was $20.4 million, representing a 77% increase over net income for the same period in 2004. Adjusted to exclude the impact of consolidated tax credit equity funds and real estate operating partnerships as a result of the application of FIN 46R and the financing method of accounting related to guaranteed tax credit equity funds due to FAS 66, net income was $23.9 million for the three months ended September 30, 2005, representing a 52% increase over similarly adjusted net income for the same period in 2004.

CAD Results of Operations

For the three months ended September 30, 2005, CAD, a non-GAAP performance measure, was $28.8 million as compared to $25.2 million for the same period in 2004. On a per share basis, CAD was $0.76 for the three months ended September 30, 2005, as compared to $0.72 for the same period in 2004.

\* \* \*

Production Summary

Investing Segment: For the three and nine months ended September 30, 2005, MuniMae acquired tax-exempt bonds and entered into forward funding commitments totaling approximately $80.2 million and $176.2 million in par value, representing decreases of 6% and 31% as compared to the three months and nine months ended September 30, 2004, respectively. All of the third quarter 2005 financings were tax-exempt multifamily revenue bonds associated with low-income housing tax credits syndicated by MuniMae and other third party syndicators.

Tax Credit Equity Segment: For the three and nine months ended September 30, 2005, MuniMae raised $370.2 million and $692.9 million of tax credit equity, representing an increase of 32% and 12% as compared to the three months and nine months ended September 30, 2004, respectively. For the three and nine months ended September 30, 2005, MuniMae invested $254.5 million and $595.6 million in tax credit properties, representing increases of 22% and 10% as compared to the three months and nine months ended September 30, 2004, respectively.

Real Estate Finance Segment: For the three and nine months ended September 30, 2005, MuniMae's Real Estate Finance segment production was $726.8 million and $1,240.2 million, representing an increase of 293% and 78% as compared to the three and nine months ended September 30, 2004, respectively. Increased production in this segment was driven largely by taxable debt production from the business formerly known as Glaser Financial, acquired on July 1, 2005, and production within the Company's fund management business, which grew significantly as a result of an acquisition that closed in February 2005.

61.    On March 10, 2006, the Individual Defendants caused or allowed MuniMae to announce a positive restatement of its past earnings for fiscal 2002 through 2004 and the nine months ended September 30, 2005.  The restatement increased earnings for these periods by $36.7 million to recognize syndication fees and interest income, among other things.  A year earlier, MuniMae had announced that it was no longer recognizing syndication fees on certain VIEs. MuniMae's press release provided as follows:

Municipal Mortgage & Equity, LLC, also known as MuniMae, announced today that it will restate net earnings for the nine month period ended September 30, 2005 as well as fiscal years 2004, 2003 and 2002 resulting in higher aggregated net earnings over this period than previously reported. This restatement does not impact cash available for distribution (CAD) in any period. CAD is a supplemental non-GAAP performance measure reported by the Company in addition to net earnings.

For the nine months ended September 30, 2005, and year ended December 31, 2004 the Company will be increasing previously reported net earnings by $10.5 million ($.27 per diluted share) and $19.4 million ($.56 per diluted share), respectively. For the years ended December 31, 2003 and 2002, the Company will be decreasing net earnings by $4.2 million ($.15 per diluted share) and $2.6 million ($.09 per diluted share), respectively. The adjustments described above are subject to the completion of the review by the Company's independent registered public accountants.

In connection with its fourth quarter financial reporting processes, the Company identified the need to record certain adjustments related to four main areas: 1) recognition of syndication fees, 2) application of equity method accounting, 3) recognition of interest income, and 4) amortization of mortgage servicing rights.

62.    On April 11, 2006, the Individual Defendants caused or allowed MuniMae to issue a press release announcing its fourth quarter and full year fiscal 2005 earnings.  MuniMae reported quarterly earnings of $16.1 million and yearly earnings of $85.8 million.  MuniMae also reported cash available for distribution of $2.51 for the year.  Defendant Falcone commented: "With greater

29

diversity of revenue sources, a more efficient operating platform and a distribution that represents a lower percentage of CAD, MuniMae is well positioned for continued growth over the long-term."

The press release provided as follows:

> MuniMae today announced unaudited financial results for the fourth quarter and full year 2005. Net earnings were $16.1 million ($.42 per diluted share) for the three months ended December 31, 2005, as compared to $17.1 million ($.48 per diluted share) for the fourth quarter of 2004, as restated. For the full year, net earnings were $85.8 million ($2.24 per diluted share) in 2005, as compared to $50.9 million ($1.46 per diluted share) in 2004, as restated. Cash available for distribution (CAD) was $29.8 million for the quarter and $95.7 million for the year ended December 31, 2005, an increase of 34% and 17%, respectively over the comparable amounts for 2004. On a per share basis, CAD was $.78 for the three months ended December 31, 2005, an increase of 24% over the fourth quarter of 2004. For the full year, CAD per share was a record $2.51, an increase of 8% over 2004 results. A reconciliation of CAD to net earnings is included in the accompanying financial table. The financial results described above are subject to the completion of the audit by the Company's independent registered public accountants, and are therefore subject to change.

> \*   \*   \*

> In recognition of these outstanding achievements, the Company's Board of Directors approved the 36th consecutive increase in the quarterly distribution that was paid to shareholders on February 10, 2006. The distribution of $.4925 per share represents a 4% increase from the comparable distribution last year. On an annualized basis, the distribution equates to $1.97 per common share and represents a 7.5% yield based on the April 10, 2006 closing price of $26.35 per share. The stated yield does not give effect to any tax savings investors may realize from the portion of the distribution that is exempt from Federal income taxes.

> Commenting on the Company's strong performance, Michael L. Falcone, Chief Executive Officer stated, "We accomplished a great deal in 2005. We closed the acquisitions of MONY Realty Capital and Glaser Financial which significantly expanded the mortgage banking products we offer as well as the services we can provide to institutional investors. In addition, we reorganized our operations to improve profitability and client service for many years to come. With greater diversity of revenue sources, a more efficient operating platform and a distribution that represents a lower percentage of CAD, MuniMae is well positioned for continued growth over the long-term."

63.    On June 21, 2006, the Individual Defendants caused or allowed MuniMae to file a Form 10-K annual report for its fiscal 2005.  The Form 10-K disclosed that FIN 46 impacted the accounting treatment for a number of MuniMae's real estate related investments.  In particular, the Form 10-K filing disclosed the following:

> Financial Accounting Standards Board's Financial Interpretations No. 46 (Revised), "Consolidation of Variable Interest Entities" ("FIN 46"), requires the consolidation of a VIE if we are the primary beneficiary of the VIE. Typically we are considered the primary beneficiary if our variable interest either absorbs a majority of the VIE's expected losses, receives a majority of the VIE's residual returns or both.

Generally, FIN 46 impacts our accounting treatment for the following types of equity investments:

- residual interests in bond securitization trusts

- interests in income-producing real estate operating partnerships

- interests in tax credit equity funds

- interests in Project Partnerships

- interests in managed real estate investment funds

The identification of the primary beneficiary involves a number of assumptions and estimates about the economic realities of the VIE and the variable interest holders. Where we have determined that we do not have a sufficiently large variable interest to be a potential primary beneficiary or that we are the only interest holder with a sufficiently large interest, we determine the primary beneficiary using a qualitative approach based on the estimated economics of the VIE. Otherwise, we incorporate a top-down quantitative approach, allocating estimated cash flows to each variable interest holder based on seniority of each of the cash flow scenarios that are probability weighted and used to determine the VIE's expected losses.

## MUNIMAE ANNOUNCES A THIRD RESTATEMENT

64.     On September 13, 2006, the Individual Defendants caused or allowed MuniMae to issue a press release announcing that it would restate its previously filed financial statements for fiscal 2003 through first quarter 2006. The press release attributed the restatement to an effort "to improve [MuniMae's] financial reporting processes." This restatement would focus principally on: (i) accounting for syndication fees; (ii) equity commitments related to affordable housing projects; and (iii) cash received from investors in guaranteed tax credit equity funds. The press release, however, made no specific mention of FIN 46R or the Company's VIEs.

65.     On October 26, 2006, MuniMae announced that it had dismissed PricewaterhouseCoopers LLC as its independent public accounting firm. The Company also announced that it had engaged KPMG LLP as its new accounting firm.

66.     On February 9, 2007, the Individual Defendants caused or allowed MuniMae to issue a press release concerning a recent drop in its stock price. That press release provided as follows:

Management of the Company is aware of recent developments in the sub-prime mortgage lending markets; however, to clarify, the Company is not engaged in sub-prime or any other single family mortgage lending activities. In fact, the debt and equity financings arranged by the Company in the housing sector are for multi-family rental properties. The Company's outlook for the multi-family rental sector is positive.

31

67.     On September 4, 2007, MuniMae filed a Form 8-K in which it disclosed that it was in danger of being delisted from the New York Stock Exchange ("NYSE") due to the pending restatement and the Company's delayed filing of its fiscal 2006 Form 10-K.  MuniMae also disclosed that the NYSE granted the Company an extension to March 3, 2008 to file the Form 10-K.

68.     On December 13, 2007, the Individual Defendants caused or allowed MuniMae to issue a second press release addressing recent volatility in its stock price.  This press release emphasized that MuniMae was not engaged in any subprime or related mortgage lending activities.

### THE TRUTH IS REVEALED

69.     Then, on January 29, 2008, MuniMae filed a Form 8-K that discussed details regarding the pending restatement and more importantly about how the Company had failed to consolidate hundreds of VIEs.  Thus, under FIN 46R, MuniMae was required to consolidate those entities' losses in its financial statements.  In particular, MuniMae disclosed that it was including approximately *200 VIEs* into its consolidated financial statements for prior reporting periods. MuniMae's previously filed financial information will be drastically impacted by the inclusion of the financial information of these entities; including drastic impacts to MuniMae's profitability-related ratios, return on assets and debt ratios.  Specifically, MuniMae disclosed as follows:

> The press release discusses the pending restatement of our audited financial statements for the year ended December 31, 2005 and 2004.  That restatement has not been completed; however, we expect that the restatement will reflect the following changes to our accounting policies:
>
> • Inclusion in our consolidated financial statements of *approximately 200 variable interest entities* of which we are deemed the primary beneficiary even though we own only small minority equity interests. The impact of consolidating previously unconsolidated ventures results in a substantial increase in the total assets on our balance sheet, in which we have a minor ownership interest.  The net income impact may be negatively affected by (i) *inclusion of our share of losses of the consolidated entities*, to the extent such losses are in excess of our general partner investments in those entities and (ii) inclusion of any amount by which the limited partners' shares of losses of consolidated entities exceeds their equity in those entities.
>
> • Changes in the way we recognize revenue for our low income housing tax credit business, the largest impact of which is the deferral of revenue (syndication fees and asset management fees) related to guaranteed funds.  In addition, the consolidation of these entities results in *our eliminating asset management and guarantee fees*, which we previously had recognized as a separate revenue item, and

reflecting them instead as a component of the net income that results from the consolidation of these funds.

- Changes in the way we account for loans, including the fair value of our held-for-sale loans we used in determining the lower of cost or market value of these loans, changes in the way we determine which held-for-investment loans are impaired and the amount of the impairment, and changes in the recognition of loan origination costs.

- Changes with respect to our accounting for derivatives, including recognizing additional types of contracts as derivatives that must be marked to market, and other changes that affect the timing of profit and loss recognition.

- Recognition of additional guarantee obligations as liabilities and changing the way some recourse obligations are amortized to income.

- Changes to the estimated fair values of some of our bonds, derivatives, mortgage servicing rights and guarantee obligations, including increasing the value of some servicing rights we obtained through acquisitions or retained when loans were sold, which reduces the future income we will recognize with regard to those servicing rights.

- Other changes in accounting relating to bonds, mortgage servicing rights, equity investments, equipment, leases, including changes to the amortization and depreciation with regard to certain assets.  In addition, we corrected our purchase accounting on some acquisitions, determination of our share of earnings and losses on investments accounted for under the equity method, and manner and timing of recognition of expenses with regard to share based compensation awards (none of which involved option backdating).

Because neither the restatement nor the audit of our restated financial statements has been completed, ***it is possible that there will be additional changes as a result of the restatement.***  The changes as a result of the restatement will affect our financial statements for the year ended December 31, 2006 and subsequent years, as well as the financial statements that are being restated.

70.     MuniMae issued a second press release on the same day in which it disclosed that the Company's stock would be delisted from the NYSE because it would not be able to make the March 3, 2008 deadline for the filing of its fiscal 2006 Form 10-K.

71.     On that same day, MuniMae hosted an investor conference call to discuss the restatement announcement.  During the call, defendant Falcone stated in response to an investor inquiry that one of the reasons for the restatement delay was because the Company was now analyzing ***more than 2,000*** real estate partnerships to determine if they should be consolidated into the Company's financial statement under FIN 46R.

72.     On February 6, 2008, MuniMae was delisted from the NYSE.  MuniMae is now traded over-the-counter on what is known as the Pink Sheets.  As MuniMae admits, being traded over-the-counter as opposed to on the NYSE has drawbacks for investors.  MuniMae lists on its website a number of these drawbacks, including: (i) costs per trade tend to be higher, (ii) there is often less liquidity and more share price volatility, (iii) trade execution is often not spontaneous, and (iv) the spread between the bid and ask price is often larger.

### REASONS THE STATEMENTS WERE IMPROPER

73.     MuniMae's Relevant Period statements, described above, failed to disclose and misrepresented the following material adverse facts, which the Individual Defendants knew, consciously disregarded, were reckless and grossly negligent in not knowing or should have known:

(a)     MuniMae was not properly consolidating losses attributed to VIEs into its financial statements;

(b)     MuniMae was also not properly accounting for "held-for-sale" loans, bonds, derivatives, mortgage servicing rights and guarantee obligations;

(c)     MuniMae lacked the internal controls necessary to ascertain the Company's financial condition; and

(d)     MuniMae's financial statements were not prepared in accordance with GAAP.

### IMPROPER FINANCIAL REPORTING

74.     Under FIN 46R, MuniMae should have made a number of disclosures concerning its interests in VIEs that were not properly reflected in the Company's Relevant Period financial statements.  These disclosures include the following:

(a)     The nature of MuniMae's involvement with a particular VIE and when that involvement was initiated;

(b)     The nature, purpose, size and activities of the VIE; and

(c)     MuniMae's estimated maximum exposure to loss as result of its involvement with the VIE.

75.     MuniMae's disclosures in its filings including its fiscal 2004 and 2005 Form 10-Ks did not properly disclose these factors. As a result of this and other accounting errors, the Company's

financial statements for 2003 through the first quarter of 2006 must now be restated. The restatement process is expected to take a very long time and will be costly because defendants failed to ensure MuniMae had in place controls that would allow it to properly account for its contractual arrangements with hundreds of entities that are made up of thousands of other partnerships. As a result, MuniMae has to manually include the financial records of these entities. In addition, these entities are also subject to audit procedures to ensure they are GAAP compliant. The following chart details the defendants and other individuals who signed those statements and made certifications of MuniMae's filings under the SOX:

| Date | Filing | Person(s) Who Signed and Certified |
|---|---|---|
| 11/13/2002 | 10-Q | Mark K. Joseph (Chairman of the Board, Chief Executive Officer, and Director); William S. Harrison (Chief Financial Officer) SOX CERTIFICATION: Mark K. Joseph (CEO); William S. Harrison (CFO) |
| 3/27/2003 | 10-K | Mark K. Joseph (Chairman of the Board, Chief Executive Officer, and Director); Robert J. Banks (Vice Chairman and Director); Michael L. Falcone (President, Chief Operating Officer, and Director); William S. Harrison (Senior Vice President, Chief Financial Officer and Secretary); Charles Baum (Director); Richard O. Berndt (Director); Robert S. Hillman (Director); Douglas A. McGregor (Director); Carl W. Stearn (Director) SOX CERTIFICATION: Mark K. Joseph (CEO); William S. Harrison (CFO) |
| 5/12/2003 | 10-Q | Mark K. Joseph (Chairman of the Board, Chief Executive Officer, and Director); William S. Harrison (Chief Financial Officer) SOX CERTIFICATION: Mark K. Joseph (CEO); William S. Harrison (CFO) |
| 8/13/2003 | 10-Q | SOX CERTIFICATION: Mark K. Joseph (CEO); William S. Harrison (CFO) |
| 11/14/2003 | 10-Q | Mark K. Joseph (Chairman of the Board, Chief Executive Officer, and Director); William S. Harrison (Chief Financial Officer) SOX CERTIFICATION: Mark K. Joseph (CEO); William S. Harrison (CFO) |
| 12/11/2003 | 10-Q/A | Mark K. Joseph (Chairman of the Board, Chief Executive Officer, and Director); William S. Harrison (Chief Financial Officer) SOX CERTIFICATION: Mark K. Joseph (CEO); William S. Harrison (CFO) |
| 3/12/2004 | 10-K | Mark K. Joseph (Chairman of the Board, Chief Executive Officer, and Director); Robert J. Banks (Vice Chairman and Director); Michael L. Falcone (President, Chief Operating Officer, and Director); William S. Harrison (Executive Vice President and Chief Financial Officer); Charles Baum (Director); Richard O. Berndt (Director); Eddie C. Brown (Director); Robert S. Hillman (Director); Douglas A. McGregor (Director); Fred N. Pratt, Jr. (Director); Carl W. Stearn (Director) SOX CERTIFICATION: Mark K. Joseph (CEO); William S. Harrison (CFO) |
| 5/6/2004 | 10-Q | Mark K. Joseph (Chairman of the Board, Chief Executive Officer, and Director); William S. Harrison (Chief Financial Officer) SOX CERTIFICATION: Mark K. Joseph (CEO); William S. Harrison (CFO) |
| 8/6/2004 | 10-Q | William S. Harrison (Chief Financial Officer) SOX CERTIFICATION: Mark K. Joseph (CEO); William S. Harrison (CFO) |
| 9/24/2004 | 10-Q/A | Mark K. Joseph (Chairman of the Board, Chief Executive Officer, and Director); William S. Harrison (Chief Financial Officer) SOX CERTIFICATION: Mark K. Joseph (CEO); William S. Harrison (CFO) |
| 9/24/2004 | 10-Q/A | William S. Harrison (Chief Financial Officer) SOX CERTIFICATION: Mark K. Joseph (CEO); William S. Harrison (CFO) |

| 11/9/2004 | 10-Q | William S. Harrison (Chief Financial Officer) SOX CERTIFICATION: Mark K. Joseph (CEO); William S. Harrison (CFO) |
|---|---|---|
| 3/16/2005 | 10-K | Mark K. Joseph (Chairman of the Board and Director); Michael L. Falcone (President, Chief Executive Officer, and Director); William S. Harrison (Executive Vice President and Chief Financial Officer); Charles C. Baum (Director); Richard O. Berndt (Director); Eddie C. Brown (Director); Robert S. Hillman (Director); Douglas A. McGregor (Director); Arthur S. Mehlman (Director); Fred N. Pratt, Jr. (Director) SOX CERTIFICATION: Michael L. Falcone (CEO); William S. Harrison (CFO) |
| 5/9/2005 | 10-Q | William S. Harrison (Chief Financial Officer) SOX CERTIFICATION: Michael L. Falcone (CEO); William S. Harrison (CFO) |
| 8/4/2005 | 10-Q | William S. Harrison (Chief Financial Officer) SOX CERTIFICATION: Michael L. Falcone (CEO); William S. Harrison (CFO) |
| 11/9/2005 | 10-Q | William S. Harrison (Chief Financial Officer) SOX CERTIFICATION: Michael L. Falcone (CEO); William S. Harrison (CFO) |
| 6/22/2006 | 10-K | Michael L. Falcone (Chief Executive Officer, President, and Director); Melanie M. Lundquist (Chief Financial Officer and Executive Vice President); Mark K. Joseph (Chairman of the Board of Directors); The Following Names Were Signed by Michael L. Falcone (Attorney-in-Fact): Charles C. Baum (Director); Richard O. Berndt (Director); Eddie C. Brown (Director); Robert S. Hillman (Director); Barbara B. Lucas (Director); Douglas A. McGregor (Director); Arthur S. Mehlman (Director); Fred N. Pratt, Jr. (Director) SOX CERTIFICATION: Michael L. Falcone (CEO); Melanie M. Lundquist (CFO) |
| 8/1/2006 | 10-Q | Melanie M. Lundquist (Chief Financial Officer and Executive Vice President) SOX CERTIFICATION: Michael L. Falcone (CEO); Melanie M. Lundquist (CFO) |

76.     The SOX certifications signed in conjunction with the filing of MuniMae's Form 10-Ks and 10-Qs contained language that was substantially similar or identical to the following certification attached to MuniMae's 2005 Form 10-K that was signed by defendants Falcone and Lundquist:

I, [Michael L. Falcone/Melanie M. Lundquist], certify that:

1.     I have reviewed this annual report on Form 10-K of Municipal Mortgage & Equity, LLC;

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.     The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal

control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and we have:

(a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.    The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

### THE IMPROPER BUYBACK

77.    During the Relevant Period, while MuniMae's stock was artificially inflated due to the improper statements described above, the Director Defendants authorized the buyback of over $1.3 million worth of MuniMae's shares at an average price of approximately $24.36 per share, which is substantially higher than MuniMae's current share price of less than $7 per share and

comparable to the $25.44  per share the defendants averaged in selling their own MuniMae stock holdings during the Relevant Period.  On information and belief, in authorizing the buyback, the Board members failed to properly discuss and consider the Company's adoption of FIN 46R and weak internal controls.  While MuniMae was repurchasing these shares, the Insider Selling Defendants made the sales described herein.

### DAMAGES TO MUNIMAE CAUSED BY THE INDIVIDUAL DEFENDANTS

78.    As a result of the Individual Defendants' improprieties, MuniMae disseminated improper statements concerning its business prospects as alleged above.  These improper statements have devastated MuniMae's credibility as reflected by the Company's $950 million market capitalization loss.

79.    Further, as a direct and proximate result of the Individual Defendants' action, MuniMae has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

(a)    liability alleged in class action lawsuits filed against the Company in connection with its improper accounting for VIEs;

(b)    costs incurred in investigating and defending MuniMae  and certain officers in the class action lawsuits, plus potentially tens of millions of dollars in settlement or to satisfy an adverse judgment;

(c)    costs incurred from repurchasing over $1.3 million of MuniMae's stock at artificially inflated prices;

(d)    costs incurred form directing manpower to correct MuniMae's defective internal controls;

(e)    costs incurred from directing manpower to restate MuniMae's prior financial results to correct the improper accounting; and

(f)    costs incurred from MuniMae's pending delistment from the NYSE.

80.    Moreover, these actions have irreparably damaged MuniMae's corporate image and goodwill.  For at least the foreseeable future, MuniMae will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior

and have misled the investing public, such that MuniMae's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## INSIDER SELLING

81.     While in possession of the undisclosed material adverse information, the Insider Selling Defendants sold the following shares of MuniMae stock:

| Defendant Name | Transaction Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| **BANKS** | 8/19/2004 | 18,000 | $24.48 | $440,640.00 |
| | 8/20/2004 | 7,800 | $24.51 | $191,178.00 |
| | 8/23/2004 | 7,000 | $24.39 | $170,730.00 |
| | 8/24/2004 | 7,500 | $24.43 | $183,225.00 |
| | 8/25/2004 | 14,000 | $24.42 | $341,880.00 |
| | 8/26/2004 | 27,000 | $24.66 | $665,820.00 |
| | 8/27/2004 | 6,200 | $24.79 | $153,698.00 |
| | 9/7/2004 | 25,000 | $25.08 | $627,000.00 |
| | 9/8/2004 | 11,800 | $25.24 | $297,832.00 |
| | 9/9/2004 | 13,100 | $25.24 | $330,644.00 |
| | 9/10/2004 | 9,900 | $25.09 | $248,391.00 |
| | 9/13/2004 | 17,600 | $25.16 | $442,816.00 |
| | 9/14/2004 | 9,000 | $25.04 | $225,360.00 |
| | 9/15/2004 | 9,600 | $25.09 | $240,864.00 |
| | | **183,500** | | **$4,560,078.00** |
| | | | | |
| **BARONE** | 6/4/2003 | 5,000 | $26.08 | $130,400.00 |
| | 8/5/2004 | 2,100 | $24.00 | $50,400.00 |
| | 8/5/2004 | 400 | $24.12 | $9,648.00 |
| | 11/19/2004 | 1,300 | $25.92 | $33,696.00 |
| | 11/19/2004 | 600 | $25.93 | $15,558.00 |
| | 11/19/2004 | 100 | $25.94 | $2,594.00 |
| | 11/19/2004 | 500 | $26.05 | $13,025.00 |
| | | **10,000** | | **$255,321.00** |
| | | | | |
| **COLE** | 6/11/2003 | 3,000 | $25.50 | $76,500.00 |
| | 6/11/2003 | 700 | $25.53 | $17,871.00 |
| | 6/11/2003 | 300 | $25.57 | $7,671.00 |
| | 6/11/2003 | 500 | $25.60 | $12,800.00 |
| | 6/12/2003 | 2,500 | $25.60 | $64,000.00 |
| | 6/12/2003 | 1,000 | $25.65 | $25,650.00 |
| | 6/26/2003 | 1,950 | $25.01 | $48,769.50 |
| | 11/18/2004 | 2,300 | $26.10 | $60,030.00 |
| | 11/18/2004 | 2,000 | $26.16 | $52,320.00 |
| | 11/18/2004 | 2,500 | $26.19 | $65,475.00 |
| | 11/18/2004 | 1,000 | $26.21 | $26,210.00 |
| | 3/29/2005 | 1,800 | $24.70 | $44,460.00 |
| | 3/29/2005 | 1,200 | $24.73 | $29,676.00 |

|  |  | 20,750 |  | $531,432.50 |
|---|---|---|---|---|
|  |  |  |  |  |
| **FALCONE** | 6/27/2003 | 850 | $25.43 | $21,615.50 |
|  | 6/27/2003 | 800 | $25.43 | $20,344.00 |
|  | 1/2/2004 | 5,080 | $24.60 | $124,968.00 |
|  | 4/1/2004 | 4,987 | $25.68 | $128,066.16 |
|  | 7/9/2004 | 4,626 | $24.00 | $111,024.00 |
|  | 7/12/2004 | 500 | $24.00 | $12,000.00 |
|  | 8/10/2004 | 1,200 | $23.75 | $28,500.00 |
|  | 8/10/2004 | 1,000 | $24.01 | $24,010.00 |
|  | 8/10/2004 | 1,000 | $24.05 | $24,050.00 |
|  | 8/10/2004 | 1,000 | $24.05 | $24,050.00 |
|  | 10/1/2004 | 5,028 | $25.16 | $126,504.48 |
|  | 1/3/2005 | 4,910 | $29.69 | $145,777.90 |
|  | 4/1/2005 | 5,100 | $24.41 | $124,491.00 |
|  | 7/1/2005 | 1,000 | $25.91 | $25,910.00 |
|  | 7/1/2005 | 400 | $25.94 | $10,376.00 |
|  | 7/1/2005 | 73 | $25.95 | $1,894.35 |
|  | 7/1/2005 | 3,500 | $25.99 | $90,965.00 |
|  | 10/3/2005 | 6,364 | $24.49 | $155,854.36 |
|  | 1/3/2006 | 6,217 | $25.95 | $161,331.15 |
|  | 4/3/2006 | 6,177 | $26.37 | $162,887.49 |
|  |  | 59,812 |  | $1,524,619.39 |
|  |  |  |  |  |
| **GLOECKL** | 6/3/2003 | 14,000 | $25.90 | $362,600.00 |
|  | 6/3/2003 | 1,000 | $25.90 | $25,900.00 |
|  | 6/3/2003 | 300 | $25.95 | $7,785.00 |
|  | 6/3/2003 | 100 | $25.96 | $2,596.00 |
|  | 6/3/2003 | 700 | $25.97 | $18,179.00 |
|  | 6/3/2003 | 200 | $25.98 | $5,196.00 |
|  | 6/3/2003 | 3,200 | $25.99 | $83,168.00 |
|  | 6/3/2003 | 400 | $26.06 | $10,424.00 |
|  | 6/3/2003 | 100 | $26.07 | $2,607.00 |
|  | 7/1/2003 | 5,000 | $25.13 | $125,650.00 |
|  | 12/11/2003 | 2,500 | $24.00 | $60,000.00 |
|  | 12/12/2003 | 17,500 | $24.00 | $420,000.00 |
|  | 12/18/2003 | 420 | $24.17 | $10,151.40 |
|  | 12/18/2003 | 1,680 | $24.25 | $40,740.00 |
|  | 12/22/2003 | 4,800 | $24.25 | $116,400.00 |
|  | 12/23/2003 | 12,900 | $24.25 | $312,825.00 |
|  | 12/23/2003 | 200 | $24.26 | $4,852.00 |
|  |  | 65,000 |  | $1,609,073.40 |
|  |  |  |  |  |
| **HARRISON** | 9/8/2003 | 3,000 | $24.25 | $72,750.00 |
|  | 9/19/2003 | 4,240 | $24.35 | $103,244.00 |
|  | 12/1/2004 | 1,400 | $26.30 | $36,820.00 |
|  | 12/1/2004 | 600 | $26.33 | $15,798.00 |
|  | 12/1/2004 | 300 | $26.34 | $7,902.00 |
|  | 12/1/2004 | 700 | $26.35 | $18,445.00 |
|  | 12/1/2004 | 900 | $26.36 | $23,724.00 |
|  | 12/1/2004 | 300 | $26.38 | $7,914.00 |

| | | | | |
|---|---|---|---|---|
| | 12/1/2004 | 200 | $26.39 | $5,278.00 |
| | 12/1/2004 | 3,300 | $26.40 | $87,120.00 |
| | 12/1/2004 | 800 | $26.41 | $21,128.00 |
| | 12/1/2004 | 2,000 | $26.42 | $52,840.00 |
| | 12/1/2004 | 1,600 | $26.43 | $42,288.00 |
| | 12/1/2004 | 1,600 | $26.44 | $42,304.00 |
| | 12/1/2004 | 1,200 | $26.45 | $31,740.00 |
| | 12/1/2004 | 600 | $26.46 | $15,876.00 |
| | 12/1/2004 | 3,500 | $26.47 | $92,645.00 |
| | 12/2/2004 | 500 | $26.20 | $13,100.00 |
| | 12/2/2004 | 500 | $26.21 | $13,105.00 |
| | 12/2/2004 | 400 | $26.22 | $10,488.00 |
| | 12/2/2004 | 6,800 | $26.23 | $178,364.00 |
| | 12/2/2004 | 500 | $26.24 | $13,120.00 |
| | 12/2/2004 | 2,000 | $26.25 | $52,500.00 |
| | 12/2/2004 | 300 | $26.30 | $7,890.00 |
| | 12/2/2004 | 100 | $26.32 | $2,632.00 |
| | 12/2/2004 | 100 | $26.33 | $2,633.00 |
| | 12/2/2004 | 1,200 | $26.35 | $31,620.00 |
| | 12/3/2004 | 11,600 | $26.20 | $303,920.00 |
| | | **50,240** | | **$1,307,188.00** |
| | | | | |
| **JOSEPH** | 4/27/2005 | 3,750 | $24.50 | $91,875.00 |
| | 4/27/2005 | 3,750 | $24.50 | $91,875.00 |
| | 5/16/2005 | 3,750 | $24.50 | $91,875.00 |
| | 5/23/2005 | 3,750 | $24.58 | $92,175.00 |
| | 6/7/2005 | 3,750 | $25.44 | $95,400.00 |
| | 6/21/2005 | 3,750 | $25.83 | $96,862.50 |
| | 7/5/2005 | 7,500 | $26.00 | $195,000.00 |
| | 7/7/2005 | 7,500 | $26.36 | $197,700.00 |
| | 7/21/2005 | 7,500 | $26.48 | $198,600.00 |
| | 8/8/2005 | 7,500 | $26.02 | $195,150.00 |
| | 8/22/2005 | 7,500 | $26.00 | $195,000.00 |
| | 9/7/2005 | 7,500 | $26.22 | $196,650.00 |
| | 9/21/2005 | 3,750 | $25.15 | $94,312.50 |
| | 10/7/2005 | 1,650 | $24.50 | $40,425.00 |
| | 10/10/2005 | 2,000 | $24.50 | $49,000.00 |
| | 10/11/2005 | 100 | $24.50 | $2,450.00 |
| | 10/21/2005 | 1,150 | $24.53 | $28,209.50 |
| | 10/24/2005 | 2,600 | $24.50 | $63,700.00 |
| | 11/9/2005 | 3,750 | $24.50 | $91,875.00 |
| | 11/21/2005 | 3,750 | $25.00 | $93,750.00 |
| | 12/7/2005 | 3,750 | $25.76 | $96,600.00 |
| | 12/21/2005 | 3,750 | $25.59 | $95,962.50 |
| | 1/3/2006 | 3,750 | $26.00 | $97,500.00 |
| | 1/3/2006 | 3,750 | $26.00 | $97,500.00 |
| | 1/9/2006 | 7,500 | $26.48 | $198,600.00 |
| | 1/23/2006 | 7,500 | $26.75 | $200,625.00 |
| | 2/7/2006 | 3,750 | $26.25 | $98,437.50 |
| | 2/7/2006 | 3,750 | $26.50 | $99,375.00 |
| | 2/21/2006 | 7,500 | $27.03 | $202,725.00 |

| | 3/7/2006 | 7,500 | $26.35 | $197,625.00 |
|---|---|---|---|---|
| | 3/21/2006 | 7,500 | $26.26 | $196,950.00 |
| | 4/7/2006 | 7,500 | $26.30 | $197,250.00 |
| | 4/21/2006 | 7,500 | $26.75 | $200,625.00 |
| | 5/8/2006 | 7,500 | $26.75 | $200,625.00 |
| | 5/22/2006 | 7,500 | $26.75 | $200,625.00 |
| | 6/7/2006 | 3,565 | $27.45 | $97,859.25 |
| | | **179,815** | | **$4,680,768.75** |
| | | | | |
| **MENTESANA** | 11/17/2004 | 800 | $26.05 | $20,840.00 |
| | 11/17/2004 | 1,200 | $26.07 | $31,284.00 |
| | 11/17/2004 | 9,800 | $26.10 | $255,780.00 |
| | 11/17/2004 | 300 | $26.11 | $7,833.00 |
| | 11/17/2004 | 1,500 | $26.12 | $39,180.00 |
| | 11/17/2004 | 1,000 | $26.13 | $26,130.00 |
| | 11/17/2004 | 400 | $26.16 | $10,464.00 |
| | | **15,000** | | **$391,511.00** |
| | | | | |
| **TOTAL:** | | **584,117** | | **$14,859,992.04** |

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

82.     Plaintiff brings this action derivatively in the right and for the benefit of MuniMae to redress injuries suffered, and to be suffered, by MuniMae as a direct result of breaches of fiduciary duty, waste of corporate assets, unjust enrichment, violations of the Exchange Act and SOX, as well as the aiding and abetting thereof, by the Individual Defendants.  MuniMae is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

83.     Plaintiff will adequately and fairly represent the interests of MuniMae in enforcing and prosecuting its rights.

84.     Plaintiff is and was an owner of the stock of MuniMae during times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

85.     The current Board of MuniMae consists of the following ten individuals: defendants Falcone, Joseph, Baum, Berndt, Hillman, McGregor, Brown, Pratt, Mehlman and Lucas.

86.     The Board ignored several red flags that should have alerted it to the critical importance of MuniMae's accounting for VIEs and the overall poor state of its financial internal controls.  These red flags included the following:

42

(a)     **The Enron Scandal**: This massive accounting scandal, which was revealed in late 2001, principally involved the use of "off balance sheet financing" to hide losses off of a company's books.  Enron used a variety of entities in which it did not have a controlling interest to hide losses.  Since MuniMae also had extensive dealings with a number of entities in which it did not have a majority interest (at least 2,000), the Board should have been on high alert as to the propriety of MuniMae's accounting for these interests.

(b)     **The First Restatement**: On September 23, 2004, MuniMae was forced to restate for deferred compensation paid to defendant Joseph.  This restatement should have put the Board on notice as to potential defects in the Company's internal controls.

(c)     **MuniMae's Adoption of FIN 46R**: MuniMae's adoption of FIN 46R had a substantial impact on the Company's fiscal 2004 earnings, which were $27 million compared to fiscal 2003 earnings of $72.5 million.  This substantial impact should have alerted the Board as to how sensitive they should be to MuniMae's interests in VIEs especially in light of a poor internal control environment.

(d)     **The Second Restatement**: On March 10, 2006, MuniMae was forced to announce a second restatement.  This was a restatement of MuniMae's past earnings for fiscal 2002 through 2004 and the nine months ended September 30, 2005 to recognize syndication fees and interest income that the Company earned from particular VIEs.  This second restatement in less than two years should have alerted the Board to serious deficiencies in MuniMae's internal controls and its accounting for VIEs.

(e)     **The Subprime Mortgage Crisis**: Due to the fact that that MuniMae had dealings with at least 2,000 real estate partnerships that may need to be consolidated into the Company's books under FIN 46R, the Board should have been sensitive to the subprime mortgage crisis.  This crisis, which arose in early 2006, came about when a downturn in the housing market coincided with rising delinquency rates amongst subprime borrowers.  And the aftershocks of that crisis have been far reaching with a number of investment banks and mortgage lenders reporting billions of dollars in losses.  Those losses could extend to a number of the VIEs that MuniMae is currently evaluating for consolidation onto the Company's balance sheet.

Despite these red flags, the Board took no action to ensure that MuniMae was properly accounting for VIEs until it was too late.  In fact, it is apparent that the current restatement was brought about by MuniMae's October 2006 change in independent auditors rather than Board action to attempt to address MuniMae's accounting problems.  The Board's conscious disregard of the red flags described above and failure to take action was not the product of valid business judgment.  Accordingly, demand is futile as to defendants Falcone, Joseph, Baum, Berndt, Hillman, McGregor, Brown, Pratt, Mehlman and Lucas.

87.     Defendants Falcone, Joseph, Baum, Berndt, Hillman, McGregor, Brown, Pratt and Mehlman, as members of the Board during MuniMae's first fiscal quarter 2005, authorized the repurchases of over $1.3 million worth of the Company's shares at artificially inflated prices. MuniMae repurchased these shares during its first fiscal quarter 2005 under a stock repurchase program that the Board authorized during July 2002.  The Board's decision to authorize the stock repurchases was not the product of valid business judgment. Among other things, the Board failed to properly discuss or consider the red flags alleged above.  Further, defendant Falcone and Joseph engaged in self-dealing in that they sold their personally held shares while directing the Company to buy shares.  Accordingly, demand is futile.

88.     As a result of their access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and attendance at management and Board meetings, each of the defendants knew the adverse non-public information regarding MuniMae's business prospects and financial results.  While in possession of this material adverse, non-public information regarding the Company, the following current members of the MuniMae Board participated in the illegal insider selling by selling the following amounts:

(a)     while in possession of adverse, non-public information, Joseph sold 179,815 shares of MuniMae stock for proceeds of $4,680,768.75;

(b)     while in possession of adverse, non-public information, Falcone sold 59,812 shares of MuniMae stock for proceeds of $1,524,619.39;

Because these defendants received a personal financial benefit from the challenged insider trading transactions, these defendants are interested. Moreover, these defendants face a sufficiently substantial threat of liability for breach of their fiduciary duties for insider selling. Since these directors have breached their fiduciary duties and are interested, any demand upon them is futile.

89.    Defendants Baum, Brown, Hillman, Mehlman and Pratt (the "Audit Committee Defendants") were, during the Relevant Period, members of the Audit Committee. The Audit Committee's charter provides that the Audit Committee is responsible for reviewing and discussing: (i) the annual and quarterly financial statements; (ii) the integrity of MuniMae's financial reporting process and controls; (iii) MuniMae's policies with respect to risk assessment and risk management, including major financial accounting exposures and steps management has taken to control such risks;  and  (iv) earnings press releases, earnings guidance and information provided to analysts and rating agencies. Thus, the Audit Committee Defendants were responsible for overseeing and directly participating in the dissemination of MuniMae's improper press releases, financial results and guidance. Accordingly, the Audit Committee Defendants breached their fiduciary duties of due care, loyalty and good faith because they participated in the preparation of improper financial statements and earnings press releases that contained improper material information. Particularly, these defendants reviewed and failed to correct MuniMae's improper statements described above. Thus, the Audit Committee Defendants face a sufficiently substantial likelihood of liability for their breach of fiduciary duties so any demand upon them is futile.

90.    The principal professional occupation of defendant Falcone is his employment with MuniMae, pursuant to which he received and continues to receive substantial monetary compensation and other benefits. Specifically, MuniMae paid Falcone the following compensation:

| Fiscal Year | Salary | Bonus | Securities Underlying Options | LTIP Payouts | All Other Compensation |
|---|---|---|---|---|---|
| 2005 | $423,077 | $600,000 | 201,863 | - | $28,986 |
| 2004 | $362,500 | $525,000 | - | - | $24,763 |
| 2003 | $312,813 | $378,125 | - | - | $20,448 |
| 2002 | $277,382 | $327,377 | - | $89,036 | $18,103 |
| 2001 | $250,000 | $100,000 | - | - | $22,218 |
| 2000 | $248,711 | $90,000 | - | - | $13,529 |

Accordingly, Falcone lacks independence from defendants Baum, Hillman, Lucas and McGregor, who are not disinterested and/or independent and who exert influence over Falcone's compensation by virtue of their positions as members of the Compensation Committee.  The Compensation Committee has the authority to review and approve Falcone's base salary, bonus and equity compensation.  This lack of independence renders defendant Falcone incapable of impartially considering a demand to commence and vigorously prosecute this action.

91.    Each of the key officers and directors knew of and/or directly benefited from the wrongdoing complained of herein.

92.    The Director Defendants of MuniMae, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from MuniMae's stockholders or recklessly and/or negligently disregarded the wrongs complained of herein and are therefore not disinterested parties.

93.    The acts complained of constitute violations of the fiduciary duties owed by MuniMae's officers and directors and these acts are incapable of ratification.

94.    Each of the Director Defendants of MuniMae authorized and/or permitted the false statements disseminated directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various improper statements and are principal beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them.

95.    Any suit by the current directors of MuniMae to remedy these wrongs would likely expose the Individual Defendants and MuniMae to further violations of the securities laws that would result in civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves.

96.    MuniMae has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for MuniMae any part of the damages MuniMae suffered and will suffer thereby.

97.     If the current directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations against them contained in the class action complaints for violations of securities law, which admissions would impair their defense of the class actions and greatly increase the probability of their personal liability in the class actions, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants.  In essence, they would be forced to take positions contrary to the defenses they will likely assert in the securities class actions.  This they will not do.  Thus, demand is futile.

98.     Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiff, the current Board has failed and refused to seek to recovery for MuniMae for any of the wrongdoing alleged by plaintiff herein.

99.     Plaintiff has not made any demand on shareholders of MuniMae to institute this action since such demand would be a futile and useless act for the following reasons:

(a)     MuniMae is a publicly held company with over 38 million shares outstanding, and over thousands of shareholders;

(b)     Making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c)     Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

### COUNT I

**Against the Director Defendants and Defendants Harrison and Lundquist for Violation of §10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder**

100.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

101.     During the Relevant Period, the Director Defendants and defendants Harrison and Lundquist disseminated or approved public statements that improperly portrayed MuniMae's business prospects, growth and margins.  The Director Defendants and defendants Harrison and Lundquist knew that the Company's public statements concerning its business prospects were misleading and intended to deceive, manipulate and/or defraud in connection therewith.

102.     The Insider Selling Defendants also sold over $14.8 million worth of shares of

47

MuniMae's common stock at inflated prices during the Relevant Period while in possession of material non-public information.   These defendants misappropriated MuniMae's proprietary information and violated their so-called "abstain or disclose" duties under the federal securities laws when they sold MuniMae stock without disclosing the information alleged to have been concealed herein.

103.    At the same time the price of the Company's common stock was inflated due to the improper reporting of MuniMae's financial results, especially in light of the Company's improper accounting for VIEs, among other things, and the Insider Selling Defendants were selling stock into the market, the Director Defendants and defendants Harrison and Lundquist were causing MuniMae to repurchase over $1.3 million worth of its own stock on the open market at an average inflated price of approximately $24.36 per share, which is substantially higher than MuniMae's current share price of under $7 per share.

104.    As such, the Director Defendants and defendants Harrison and Lundquist violated §10(b) of the Exchange Act and SEC Rule 10b-5 in that they:

(a)    employed devices, schemes and artifices to defraud;

(b)    made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    engaged in acts, practices and a course of business that operated as a fraud or deceit upon MuniMae and others in connection with their purchases of MuniMae common stock during the Relevant Period.

105.    As a result of the Director Defendants' and defendants Harrison and Lundquist's misconduct, MuniMae has and will suffer damages in that it paid artificially inflated prices for MuniMae common stock purchased on the open market.   MuniMae would not have purchased MuniMae common stock at the prices it paid, had the market previously been aware that the market price of MuniMae' stock was artificially and falsely inflated by defendants' misleading statements. As a direct and proximate result of these defendants' wrongful conduct, MuniMae suffered damages in connection with its purchases of MuniMae common stock during the Relevant Period.  By reason

of such conduct, the Director Defendants and defendants Harrison and Lundquist are liable to the Company pursuant to §10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder.

## COUNT II

### Against Defendants Falcone, Joseph, Harrison and Lunquist for Disgorgement under the Sarbanes-Oxley Act of 2002

106.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

107.    Section 304 of SOX that if a public company prepares an accounting restatement due to material non-compliance with any financial reporting requirement under federal securities laws, and such non-compliance resulted from misconduct, then the company's CEO and CFO must reimburse the company for certain payments made by the company to those executives.  Section 304, entitled "Forfeiture of Certain Bonuses and Profits," provides in full:

> (a)    **Additional compensation prior to noncompliance with commission financial reporting requirements**.  If an issuer is required to prepare an accounting restatement due to the material non-compliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws, ***the chief executive officer and chief financial officer of the issuer shall reimburse the issuer for*** –
>
> > 1.    any bonus or other incentive-based or equity-based compensation received by that person from the issuer during the 12-month period following the first public issuance or filing with the Commission (whichever first occurs) of the financial document embodying such financial reporting requirement; and
> >
> > 2.    any profits realized from the sale of securities of the issuer during that 12-month period.
>
> (b)    **Commission exemption authority**.  The Commission may exempt any person from the application of subsection (a), as it deems necessary and appropriate.

108.    MuniMae will restate its financial statements filed from fiscal 2003 through 2006 due to the material non-compliance of such statements with federal securities laws reporting requirements.  These restatements resulted from "misconduct" within the meaning of Section 304 of SOX.  As a result, defendant Falcone, as MuniMae's current CEO; defendant Joseph as MuniMae's

former CEO; and defendants Harrison and Lundquist as MuniMae's former CFOs are required to reimburse MuniMae for all bonuses or other incentive-based or equity-based compensation received by them from the Company during its fiscal 2003 through 2006 financial periods.  Further, these defendants are liable to MuniMae for any profits realized from the sales of securities by the Company during that same period of time.

109.    Defendants Falcone, Joseph, Harrison and Lundquist are also liable to plaintiff for reasonable costs and attorneys' fees in the prosecution of this derivative action on behalf of MuniMae.

## COUNT III

### Against Defendants Falcone, Joseph, Harrison, Lundquist, Baum, Brown, Hillman, Mehlman and Pratt for Violation of §20(a) of the Exchange Act

110.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

111.    Defendant Falcone, MuniMae's CEO, defendant Joseph, MuniMae's Chairman and former CEO and defendants Harrison, Lundquist, Baum, Brown, Hillman, Mehlman and Pratt as members of the Audit Committee, directly or indirectly controlled or induced the Individual Defendants who violated §10(b) of the Exchange Act and SEC Rule 10b-5 as alleged above.

112.    These defendants are jointly and severally liable to the same extent as the Individual Defendants under §20(a) of the Exchange Act.  These defendants did not act in good faith.

## COUNT IV

### Against All Defendants for Breach of Fiduciary Duty for Improper Financial Reporting

113.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

114.    The Individual Defendants owed and owe MuniMae fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe MuniMae the highest obligation of good faith, fair dealing, loyalty and due care.

115.    The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

116.     Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the financial results of the Company and failed to correct the Company's improper accounting.  In particular, MuniMae's Relevant Period statements improperly accounted for the Company's interests in VIEs.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

117.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, MuniMae has sustained significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

118.     Plaintiff, on behalf of MuniMae, has no adequate remedy at law.

## COUNT V

### Against the Insider Selling Defendants for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information

119.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

120.     At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold MuniMae common stock on the basis of such information.

121.     The information described above was proprietary non-public information concerning MuniMae's true financial results and improper accounting.  It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold MuniMae common stock.

122.     At the time of their stock sales, the Insider Selling Defendants knew that the Company's financial results were materially overstated.  The Insider Selling Defendants' sales of MuniMae common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

123.     Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

## COUNT VI

### Against All Defendants for Breach of Fiduciary Duty for Abuse of Control

124.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

125.     The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence MuniMae, for which they are legally responsible.  In particular, the Individual Defendants abused their positions of authority by causing or allowing MuniMae to issue statements that improperly portrayed MuniMae's financial results.

126.     As a direct and proximate result of the Individual Defendants' abuse of control, MuniMae has sustained significant damages.  These damages include, but are not limited to, MuniMae's severe loss of market credibility as reflected in its $950 million market capitalization loss and substantial costs in connection with the securities class action lawsuits.

127.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

128.     Plaintiff, on behalf of MuniMae, has no adequate remedy at law.

## COUNT VII

### Against All Defendants for Breach of Fiduciary Duty for Gross Mismanagement

129.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

130.     By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of MuniMae in a manner consistent with the operations of a publicly held corporation.

131.     As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, MuniMae has sustained significant damages in excess of hundreds of millions of dollars.

132.     As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

133.    Plaintiff, on behalf of MuniMae, has no adequate remedy at law.

## COUNT VIII

### Against All Defendants for Waste of Corporate Assets

134.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

135.    As a result of the misconduct described above, the Individual Defendants wasted corporate assets: (i) by failing to properly consider the interests of the Company and its public shareholders; (ii) by failing to conduct proper supervision; (iii) by paying bonuses to certain of its executive officers; and (iv) by incurring potentially hundreds of millions of dollars of legal liability and/or legal costs to defend defendants' unlawful actions.

136.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

137.    Plaintiff, on behalf of MuniMae, has no adequate remedy at law.

## COUNT IX

### Against All Defendants for Unjust Enrichment

138.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

139.    By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of MuniMae.

140.    Plaintiff, as a shareholder and representative of MuniMae, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.    Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, waste of corporate assets and unjust enrichment;

B.      Declaring that the Director Defendants and defendants Harrison and Lundquist are liable under of §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and that defendants Falcone, Joseph, Harrison, Lundquist, Baum, Brown, Hillman, Mehlman and Pratt are jointly and severally liable under §20(a) of the Exchange Act and awarding MuniMae damages;

C.      Declaring that defendants Falcone, Joseph, Harrison and Lunquist are liable under §302 of SOX, and requiring them to reimburse MuniMae for all bonuses or other incentive based or equity based compensation received by them during the period in which MuniMae will restate its financial results;

D.      Directing MuniMae to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect MuniMae and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote the following Corporate Governance Policies:

1.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

2.      a provision to permit the shareholders of MuniMae to nominate at least three candidates for election to the Board;

3.      a proposal to ensure the accuracy of the qualifications of MuniMae's directors, executives and other employees;

4.      a proposal to control insider selling;

5.      a proposal to control MuniMae's spending on stock repurchases; and

6.      a proposal to appropriately test and then strengthen the internal audit and control functions.

E.      Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting defendants' assets so as to assure that plaintiff on behalf of MuniMae has an effective remedy;

F.      Awarding to MuniMae restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

G.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

H.      Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED:  February __, 2008               LAW OFFICES OF CURTIS V. TRINKO, LLP


                                        /s/ Curtis V. Trinko
                                        CURTIS V. TRINKO (CT-1838)
                                        WAI K. CHAN (WC-0743)
                                        16 West 46th Street
                                        7th Floor
                                        New York, NY 10036
                                        Telephone: (212) 490-9550

                                        ROBBINS UMEDA & FINK, LLP
                                        BRIAN J. ROBBINS
                                        MARC M. UMEDA
                                        STEVEN J. SIMERLEIN
                                        GREGORY E. DEL GAIZO
                                        610 West Ash Street, Suite 1800
                                        San Diego, CA 92101
                                        Telephone: (619) 525-3990
                                        Facsimile:  (619) 525-3991

                                        Attorneys for Plaintiff

320029_7.DOC

## VERIFICATION

I, Judith Greenberg, have read the Municipal Mortgage & Equity L.L.C. Verified Shareholder Derivative Complaint and know the contents thereof. The Complaint is true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and Accepted:

Dated. 2/20/08

JUDITH GREENBERG